*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0432P (6th Cir.)
File Name: 03a0432p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

SVITLANA DENKO,
        *Petitioner,*

    *v.*

           No. 02-3746

IMMIGRATION AND
NATURALIZATION SERVICE,
        *Respondent.*

On Appeal from the Board of Immigration Appeals.
No. A76 853 968.

Argued: July 29, 2003

Decided and Filed: December 8, 2003

Before: DAUGHTREY and MOORE, Circuit Judges;
CALDWELL, District Judge.*

_____

### COUNSEL

**ARGUED:** David W. Leopold, Cleveland, Ohio, for
Petitioner. Greg D. Mack, UNITED STATES

---

*The Honorable Karen Caldwell, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent. **ON BRIEF:** David W. Leopold, Cleveland,
Ohio, for Petitioner. Greg D. Mack, Emily A. Radford,
UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent. Nadine K. Wettstein,
AMERICAN IMMIGRATION LAW FOUNDATION,
Washington, D.C., for Amicus Curiae.

_____

### OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Petitioner
Svitlana Denko ("Denko") appeals the decision of the Board
of Immigration Appeals ("BIA" or "Board") to affirm without
opinion the Immigration Judge's ("IJ") order of removal
against Denko and its decision to deny Denko's motion to
rescind the *in absentia* order of removal. Denko makes two
arguments on appeal. First, Denko argues that it was an abuse
of discretion for the IJ not to reopen removal proceedings
when Denko introduced evidence that her failure to attend her
second master-calendar hearing resulted from her attorney's
ineffective assistance of counsel and not from any decision on
Denko's part to abandon her request for asylum. Second,
Denko argues that the regulation permitting the Board
summarily to affirm without opinion the IJ's decision,
8 C.F.R. § 1003.1(a)(7), violates established administrative
law because it is inconsistent with other provisions of the
Immigration and Nationality Act ("INA") and violates the
Due Process Clause of the United States Constitution because
it fails to produce a separate BIA decision for the court of
appeals to review. We **AFFIRM** the judgment of the IJ and
uphold 8 C.F.R. § 1003.1(a)(7)'s summary-affirmance-
without-opinion rule as both constitutional and consistent
with administrative-law precedent.

## I.  BACKGROUND

Denko came to this country as a lawful nonimmigrant visitor on April 25, 1993, from her native homeland in Ukraine. Her authorization permitted her to stay for no longer than six months.  Denko remained in this country well past her six-month authorization, and it was not until March 3, 1998,[1] nearly five years after Denko first entered, that she filed an affirmative request for asylum based on religious persecution. Denko is Jewish and claims that, while living in Ukraine, she was persecuted by local Ukrainian nationalists. Denko states that she attempted to secure protection from local government agencies in Ukraine but that none would assist her.  She cites as specific examples of persecution, the following:  large fines were fraudulently imposed on her business by anti-Semitic local officials, she was harassed and received threats of violence from local police, and she was victimized and beaten by members of the Ukrainian Self Defense, a military unit of the Ukrainian National Army.

After Denko's request for asylum, the INS served Denko on January 27, 1999, with a notice to appear ("NTA") to show cause as to why she did not leave the United States on or before her six-month permission expired.  The NTA ordered Denko to appear before the IJ on October 29, 1999, and, according to the INS, included a warning which stated: "If you fail to attend the hearing at the time and place designated in this notice, *or any date and time later directed by the Immigration Court*, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS." Appellee's Br. at 5.

At this October initial hearing, Denko was represented by her attorney, Nicoleta Wojnar ("Wojnar").  Denko admitted to the factual allegations against her and that she was

---

[1]Respondent suggests that Denko did not apply for asylum until on or about March 27, 1998.

removable pursuant to the INA.  During this hearing, the IJ advised Denko of the consequences of her failure to appear at the scheduled second master-calendar hearing set for April 7, 2000.  In addition, the order issued on October 29 contained a written warning that Denko must appear on April 7, 2000:

> Failure to appear at your hearing except for exceptional circumstances may result in one or more of the following actions:  (1) You may be taken into custody by the Immigration and Naturalization Service and held for further action[,] OR (2) Your hearing may be held in your absence under section 240(b)(5) of the Immigration and Nationality Act.  An order of removal will be entered against you if the Immigration and Naturalization Service established by clear, unequivocal and convincing evidence that a) you or your attorney has been provided this notice and b) you are removable.

Joint Appendix ("J.A.") at 32 (Not. of Hr'g in Removal Proceedings).  Another reminder came almost four months before the second master-calendar hearing, when Denko received a letter from Wojnar stating:

> If you would like we could request a Motion to the Judge so you do not have to be present on April 07, 2000, in which case I will be there representing you . . . .
>
> Please let our office know if this is something you would like to consider and although we have the right to request it from the Judge, the Judge does not necessarily have to grant it.  However, for your convenience we will attempt to do so if you so desire.

J.A. at 30.[2]  It is the wording of this letter that forms the basis for Denko's assertion of ineffective assistance of counsel.

---

[2]Denko's brief misquotes this letter in a significant way:  she omits the key phrase "if you so desire."  Appellant's Br. at 4.  Omission of this critical phrase distorts the meaning of the letter.

Denko, noting that English is not her native language, argues that she interpreted Wojnar's letter to mean that Denko's presence was not required at the master-calendar hearing. Moreover, Denko claims that Wojnar informed her that Wojnar would seek a motion to waive appearance. As a result of Wojnar's letter, Denko failed to attend her second master-calendar hearing on April 7, 2000. Consequently, the hearing was conducted *in absentia* pursuant to § 240(b)(5)(A) of the INA. Because a waiver of Denko's personal appearance was never requested, the IJ ordered Denko removed to Ukraine. The IJ concluded that no special circumstances were present to justify Denko's absence from the hearing.

On June 22, 2000, after retaining new counsel, Denko moved to reopen her removal proceedings based on ineffective assistance of counsel.[3] Denko claimed in her accompanying affidavit that she misunderstood the mixed signals contained in Wojnar's letter. Additionally, Denko argued that Wojnar never informed her of Denko's required presence and never sought the waiver that Wojnar agreed to seek in the letter. As evidence of Wojnar's ineffectiveness, Denko pointed out that the INA requires the alien's presence at the master-calendar hearing except in a few special circumstances, none of which was present in Denko's case. On August 3, 2000, the IJ denied Denko's motion. The judge reasoned that:

> Apart from [Wojnar's] letter the Respondent has not offered any additional evidence to indicate that there was an agreement to submit a Motion to Waive Appearance nor has the Respondent indicated anything further in her affidavit to support the existence of the "agreement." A

---

[3]As required by *In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988), Denko simultaneously filed a grievance against Wojnar with the Cleveland Bar Association. The Ohio Disciplinary Counsel dismissed the grievance, stating that Wojnar adequately communicated with Denko and sought to keep her abreast of the details in her immigration case.

plain reading of the letter indicates that Respondent's prior counsel was merely extending an offer to file the motion. It does not rise to the level of an agreement without evidence to indicate that the offer was accepted. There was no evidence of a letter, telephone call, or any other form of communication that would indicate the Respondent accepted the offer and had a reasonable expectation that it would be filed.

J.A. at 22 (Decision & Or. of I.J.). Additionally, the IJ noted that even if Wojnar agreed to file the motion and then failed to perform, Denko had a duty to follow up because Wojnar's letter made clear that the IJ had discretion to grant or deny the motion. The IJ thus held that the *in absentia* order of removal was proper.

Denko timely filed a notice of appeal to the Board on August 29, 2000. Denko argued that the IJ's decision was an abuse of discretion because it relied on Wojnar's ambiguous letter to show that Denko was aware of the consequences of her failure to appear. According to Denko, because English is not her native tongue and because Wojnar's confusing letter negated the IJ's prior warnings, the motion to reopen should have been granted because Denko's failure to appear was the result of Wojnar's ineffectiveness as counsel. On June 5, 2002, the Board, using the newly enacted streamlining procedures, affirmed the IJ's order without issuing an opinion. Denko now seeks review in this court, where she challenges the BIA's affirmance of the IJ's order of removal and the BIA's use of the affirmance-without-opinion procedure.

## II.  ANALYSIS

### A.  Denial of the Motion to Rescind the *In Absentia* Order of Removal

Denko asserts that the IJ abused her discretion when she denied Denko's motion to reopen the order of removal.

Denko argued in that motion, and argues here on appeal, that Wojnar's assistance was ineffective because Wojnar failed to make clear Denko's responsibility for appearing at the second hearing on April 7, 2000. In Denko's estimation, the IJ abused her discretion when she failed to give adequate weight to Denko's affidavit and supporting evidence that Denko was misinformed and would have reacted differently had she been given the proper information.

The denial of a motion to reopen or reconsider a removal order is reviewed for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 324 (1992). An abuse of discretion can be shown when the IJ or Board offers no "rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982). When the BIA adopts the reasoning of the IJ, we review the IJ's decision to determine whether the BIA abused its discretion. *Kegode v. Ashcroft*, No. 01-3865, 2003 WL 1949609, at *2 (6th Cir. April 22, 2003) (unpublished). When the BIA issues an order pursuant to 8 C.F.R. § 1003.1(a)(7), affirming the result of the IJ's decision but not necessarily adopting the IJ's reasoning, the only "rational explanation" is that of the IJ; thus here we review the IJ's decision for an abuse of discretion, as is discussed more fully in Part II.B. infra.

An *in absentia* order issued pursuant to § 240(b)(5) of the INA can be rescinded if the alien can show that she failed to appear because: (1) she was in custody and her failure to appear was not her fault; (2) she never received notice of the proceedings; or (3) she had other exceptional circumstances. 8 C.F.R. § 1003.23(b)(4)(iii). *See also* 8 U.S.C. § 1229a(b)(5)(C). In Denko's case, because she was not in custody and most certainly received multiple forms of notice, the order can be rescinded only if the motion to reopen shows that there were exceptional circumstances causing her failure to appear. 8 U.S.C. § 1229a(b)(5)(C)(i). Section 1229a(e)(1) describes exceptional circumstances as matters "beyond the control of the alien," including "serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances." 8 U.S.C. § 1229a(e)(1). An IJ considers the totality of the circumstances when making a determination that exceptional circumstances exist. *See In re J-P-*, 22 I. & N. Dec. 33 (BIA 1998); *see also* H.R. Conf. Rep. No. 101-955, at 119, 132 (1990), reprinted in 1990 U.S.C.C.A.N. 6784, 6797 (noting that "the conferees expect that in determining whether an alien's failure to appear was justifiable the Attorney General will look at the totality of the circumstances to determine whether the alien could not reasonably have been expected to appear"). Thus, the question that we must address is whether it was an abuse of discretion for the IJ to determine that Denko's claims of ineffective assistance of counsel were insufficient to constitute an exceptional circumstance.

Because "[a] deportation proceeding is a purely civil action," *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984), an ineffective assistance of counsel claim is reviewed under the Due Process Clause of the Fifth Amendment rather than under the Sixth Amendment. "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). Ineffective assistance of counsel in a deportation proceeding will rise to the level of a due-process violation under the Fifth Amendment "only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Ramirez-Durazo v. INS*, 794 F.2d 491, 499-500 (9th Cir. 1986) (quotation omitted); *see also Taniguchi v. Schultz*, 303 F.3d 950, 958 (9th Cir. 2002) ("To show ineffective assistance of counsel, a party must demonstrate that the actions of his/her attorney resulted in prejudice to the party. A party must prove prejudice by alleging facts that permit the court to infer that competent counsel would have acted otherwise." (citations omitted)). The alien will succeed if he meets his burden of showing more than "mere[] ineffective assistance of counsel, but

assistance which is so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." *Ramirez-Durazo*, 794 F.2d at 500 (quotation omitted); *see also Huicochea-Gomez*, 237 F.3d at 699 ("The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process.").

The IJ determined that Denko did not receive ineffective assistance of counsel because Wojnar's letter could not be interpreted to form an agreement that Wojnar would request a waiver of Denko's appearance. At best, Wojnar's letter to Denko could be interpreted as extending an offer to file a waiver motion. According to the IJ, Denko offered no other evidence of an agreement between herself and Wojnar. Moreover, the IJ noted that even assuming that the letter could be interpreted to constitute an agreement, the letter clearly stated that the IJ had discretion to grant or refuse any request, and thus Denko should have followed up with Wojnar to determine the status of her required attendance at the hearing. The IJ noted that at the initial scheduling hearing, Denko was warned of the consequences of her failure to appear at any future scheduling hearing both verbally and in writing.

The IJ's determination that Wojnar's actions were insufficient to constitute an exceptional circumstance explaining Denko's absence, and thus did not violate Denko's due-process rights, was not an abuse of discretion. The IJ provided a "rational explanation" for her conclusions that Denko had sufficient notice of the consequences for failure to attend her hearing and that the allegations against Wojnar were insufficient to establish ineffective assistance of counsel. *Balani*, 669 F.2d at 1161. In addition, Denko was not entitled to relief on her alleged ineffective-assistance-of-counsel claim because she failed to show how her liberty interest was violated. *Huicochea-Gomez*, 237 F.3d at 699. Denko is unable to show the necessary "prejudice" or "fundamental

unfairness" because she cannot establish that "but for [Wojnar's] legal advice, [she] would have been entitled to continue residing in the United States." *Id.* at 699-700 (noting that "[t]he failure to be granted discretionary relief does not amount to a deprivation of a liberty interest"). In fact, Denko merely asserts that if she had not relied on Wojnar's allegedly confusing letter, she would have appeared at her scheduled hearing and an order *in abstentia* would not have been entered against her. While this may very well be accurate, this is not equivalent to a showing that if Denko attended the hearing she would have been granted the asylum she sought. The lack of fundamental unfairness becomes even more clear when we consider that Denko neither contests the illegal nature of her presence in the U.S. nor her deportability. In addition, Denko failed to allege any facts that tend to show that a competent lawyer would have behaved differently than Wojnar. *See Taniguchi*, 303 F.3d at 958 (noting that prejudice can be established through facts tending to show that a competent lawyer would have acted differently).

Denko's suggestion that because her affidavit states that she was confused by Wojnar's letter the IJ was obligated to find that Denko suffered ineffective assistance of counsel is not compelling. Wojnar's letter reiterated that Denko's hearing was scheduled for April 7, 2000, and provided Denko an opportunity to seek to avoid her required attendance at the hearing. However, the language used in the letter clearly indicated that a motion to waive appearance could be filed at Denko's *request*, and Denko presented no evidence of any such request made to Wojnar. Although Denko argues that her language barrier prohibited her from understanding the precise language in the letter, she makes no argument that she did not understand the IJ's verbal and written warnings at the initial hearing. Moreover, it was Denko's responsibility to understand the contents of a letter which, under a plain reading, only can be interpreted as an offer to file a motion with the immigration court. Because Denko failed to heed the prior warnings regarding attendance and neglected to confirm

her own understanding of Wojnar's letter, we cannot conclude that Denko suffered fundamental unfairness.

In sum, while Denko has shown that her failure to appear at her hearing precipitated the *in absentia* order against her, Denko has failed to meet her burden to show fundamental unfairness or prejudice arising from Wojnar's conduct. *See Huicochea-Gomez*, 237 F.3d at 699; *Ramirez-Durazo*, 794 F.2d at 499-500. Because Denko failed to establish an exceptional circumstance through a showing of ineffective assistance of counsel, the IJ did not abuse her discretion in denying Denko's motion to rescind the *in absentia* order of removal, and the BIA did not abuse its discretion in affirming the IJ's conclusions.

## B. Summary-Affirmance-Without-Opinion Procedure

On appeal to the Board, Denko challenged the IJ's denial of her motion to rescind the *in absentia* order of removal based on Denko's failure to establish exceptional circumstances. The Board, using the summary-affirmance-without-opinion procedure (also referred to as the streamlining procedure), agreed with the IJ's result. Now on appeal, Denko challenges the streamlining procedure's compliance with the requirements of due process and established administrative-law precedent. Denko makes two broad arguments for striking down 8 C.F.R. § 1003.1(a)(7).[4] First, Denko asserts

---

[4] Section 1003.1(a)(7) states, in relevant part:
The Chairman may designate, from time-to-time, permanent Board Members who are authorized, acting alone, to affirm decisions of Immigration Judges and the Service without opinion. . . . The single Board Member to whom a case is assigned may affirm the decision of the Service or the Immigration Judge, without opinion, if the Board Member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
　　(A) The issue on appeal is squarely controlled by existing Board or federal court precedent and does

that § 1003.1(a)(7) violates congressional intent embodied in the INA, because Congress intended to enact greater procedural protections in administrative hearings for aliens. According to Denko, the administrative-law scheme was designed so that aliens would have two de novo reviews of their claims within the administrative system, one with the IJ and another with the BIA. In Denko's estimation, § 1003.1(a)(7)'s license to members of the Board to issue summary affirmances without opinions renders de novo review by the BIA impossible. Denko also asserts that § 1003.1(a)(7) contradicts other INA provisions which permit appeals only from final orders. Denko argues that because the BIA did not independently render a decision, there is no final agency order for this court to review.

Second, Denko asserts a Due Process Clause violation in that the regulation allows the BIA to issue a summary affirmance without also issuing a separate opinion. According to Denko, because the BIA does not issue its own opinion, Denko has a diminished opportunity to receive a "full and fair judicial review" of the final agency order. Appellant's Br. at 7. Denko argues that the Supreme Court has noted that in order for a court to review an agency's action, the action must be clearly stated because "[i]t will not do for a court to be compelled to guess at the theory

---

　　　not involve the application of precedent to a novel fact situation; or
　　(B) The factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.
. . .
An order affirming without opinion, issued under authority of this provision, shall not include further explanation or reasoning. Such an order approves the result reached in the decision below; it does not necessarily imply approval of all of the reasoning of that decision, but does signify the Board's conclusion that any errors in the decision of the Immigration Judge or the Service were harmless or nonmaterial.
8 C.F.R. § 1003.1(a)(7).

underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive." *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). Denko cites a Ninth Circuit case for the proposition that where the Board fails to offer a reasoned explanation, the reviewing court must set aside the Board's decision. *See Tukhowinich v. INS*, 64 F.3d 460, 464 (9th Cir. 1995). The main problem with the summary affirmance process, according to Denko, is that the basis for the Board's affirmance is concealed from our review by the explicit command of the regulation. Denko asserts that this concealment makes the summary-affirmance-without-opinion procedure violate due process.[5]

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). As an initial matter, aliens who have entered the United States, both lawfully and unlawfully, cannot be "expelled" without the government following established procedures consistent with the requirements of due process. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). We review de novo claims of due-process violations in deportation proceedings. *Huicochea-Gomez*, 237 F.3d at 699. When the

---

[5] This argument is also the heart of the Amicus Curiae's (hereinafter "American Immigration Law Foundation") brief. Both Denko and the American Immigration Law Foundation agree that the failure of the Board to issue an opinion makes it impossible for a reviewing court to determine whether Denko received any process as required by the Due Process Clause.

A summary affirmance does not indicate which of the[] alternatives [in § 1003.1(a)(7)] was applied to the case. It is equally impossible to determine how the criteria were analyzed: what precedent was considered; why the facts were found not to be novel; what factual and legal questions were considered; and the standard for determining whether questions raised on appeal were "so insubstantial" that three-Member review is not warranted.

Amicus Br. at 13.

---

Board adopts the decision of the IJ in lieu of issuing its own opinion, we review the IJ's decision as the final agency decision. *Alaelua v. INS*, 45 F.3d 1379, 1382 (9th Cir. 1995).

At the time Denko appealed to the Board, the Board's general policy was to sit in three-member panels to review IJ decisions on appeal.[6] Under § 1003.1(a)(7), adopted by the Department of Justice ("DOJ") in 1999, a single Board member is authorized to issue a decision affirming an IJ's decision without stating the basis for such affirmance. This affirmance implies that the IJ decided the case correctly, any errors committed by the IJ were immaterial or harmless, and either the issue is squarely controlled by precedent and does not involve a novel factual issue or the factual and legal issues raised on appeal are too insubstantial to warrant a three-member review. 8 C.F.R. § 1003.1(a)(7). If an appeal from a decision of the IJ meets the regulation's criteria, the Board issues an order containing the following statement: "The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination." *Id.* at § 1003.1(a)(7)(iii). If an appeal does not meet the criteria contained in § 1003.1(a)(7), a three-member panel of the BIA must review the petition. *Id.* at § 1003.1(a)(7)(iv).

Section 1003.1(a)(7) specifically indicates that a summary affirmance "does not necessarily imply approval of all of the reasoning of the [affirmed] decision." *Id.* at § 1003.1(a)(7)(iii). In the comments to the proposed rule, the

---

[6] As noted by the American Immigration Law Foundation, the most recent revisions to the regulations mandate single-member review as the standard procedure for appeals. Now a three-member panel on appeal is appropriate only when the BIA needs to establish precedent, the BIA needs to settle differences among IJs, the case is of national importance, the IJ's decision is not in conformity with the law, the IJ makes a clearly erroneous factual determination, or the Board needs to reverse the IJ's decision. 8 C.F.R. § 1003.1(e)(6).

DOJ identified the impetus behind permitting a summary affirmance by a single Board Member:

> To operate effectively in an environment where over 28,000 appeals and motions are filed yearly, the Board must have discretion over the methods by which it handles its cases. The process of screening, assigning, tracking, drafting, revising, and circulating cases is extremely time consuming. Even in routine cases in which all Panel Members agree that the result reached below was correct, disagreements concerning the rationale or style of a draft decision can require significant time to resolve. The Department has determined that the Board's resources are better spent on cases where there is a reasonable possibility of reversible error in the result reached below.

Executive Office for Immigration Review; Board of Immigration Appeals: Streamlining, 64 Fed. Reg. 56135, 56137 (Oct. 18, 1999) (hereinafter "Streamlining").[7] To remedy the problems resulting from the dramatic increase in appeals, the Attorney General sought to implement a new streamlined appellate review system because "in a significant number of appeals and motions filed with the Board, a single appellate adjudicator can reliably determine that the result reached by the adjudicator below is correct and should not be changed on appeal." *Id.* at 56135. By expressly prohibiting the single Board member from including his or her own explanation or reasons within the order, the regulation further alleviates the burden on the Board.

---

[7] 28,000 appeals in 1998 was a dramatic increase from the 3,000 appeals handled by the BIA in 1984. In 2002, the number of appeals to the BIA reached 34,000. *Carriche v. Ashcroft*, 335 F.3d 1009, 1012 (9th Cir. 2003) (citing Executive Office for Immigration Review, Statistical Year Book: 2002, at 49, fig. 23, available at http://www.usdoj.gov/eoir/statspub/fy02syb.pdf).

In response to Denko's first argument[8] — that § 1003.1(a)(7) is inconsistent with administrative law — we note that the cases she cites stand for the proposition that the BIA has the *power* to conduct reviews de novo, not that it is required to do so. *See Abdulai v. Ashcroft*, 239 F.3d 542, 548-49 (3d Cir. 2001) ("Because an alien facing removal may appeal to the BIA as of right, and because the BIA has the power to conduct a *de novo* review of IJ decisions, there is no 'final order' until the BIA acts."); *Castillo v. INS*, 951 F.2d 1117, 1120-21 (9th Cir. 1991) ("The BIA has the power to conduct a *de novo* review of the record, to make its own findings, and to determine independently the sufficiency of the evidence."). While deliberate action from the BIA may be necessary, Denko's suggestion that a summary affirmance without opinion is not a final order is directly contradicted by the terms of the regulation which indicate that the IJ's opinion becomes the final agency determination subject to review. 8 C.F.R. § 1003.1(a)(7)(iii) ("The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination.").

Courts have consistently allowed the IJ's decision to become the final agency determination subject to review when the Board has adopted the IJ's findings or has deferred to the IJ's decision. *See Guentchev v. INS*, 77 F.3d 1036, 1038 (7th Cir. 1996) ("To adopt someone else's reasoned explanation *is* to give reasons."); *Abdulai*, 239 F.3d at 549 n.2; *Chen v. INS*, 87 F.3d 5, 8 (1st Cir. 1996). The Third Circuit in *Abdulai* noted that there are occasions where "as a matter of logic" the courts of appeals are reviewing effectively the IJs' decisions, such as when the BIA affirms on the basis of the IJ's opinion. *Abdulai*, 239 F.3d at 549 n.2.

---

[8] In *Carriche*, the Ninth Circuit noted that alien petitioners "have understandable concerns about the streamlining process" including "the lack of transparency in the process, the increasing frequency in which the process is invoked, the speed with which appeals are decided, and a belief that the BIA may be abdicating its statutorily-mandated role of appellate review." *Carriche*, 335 F.3d at 1013.

Moreover, *Tukhowinich* expressly states that the BIA has the authority to rely on an IJ's opinion that provides the required reasoning. *See Tukhowinich*, 64 F.3d at 463. All of these decisions, however, require that the BIA give the IJ's findings "individualized consideration." *See, e.g.*, *Chen*, 87 F.3d at 8. When the BIA does not perform its duty to "review the record and assess the IJ's conclusions," the BIA abuses its own discretion. *Tukhowinich*, 64 F.3d at 463. Thus, we must address Denko's argument that the summary affirmance procedure enables BIA members to give less than full consideration to the IJ decisions they review. The First Circuit previously has addressed this argument and concluded that a challenge to the summary affirmance procedure cannot stand when the only evidence that the summary affirmance procedure causes the BIA to disregard its review responsibilities is the nature of the procedure itself combined with statistics indicating that thorough review would be difficult. *See Albathani v. INS*, 318 F.3d 365, 378-79 (1st Cir. 2003). We agree that a petitioner must show more. Here, Denko has provided no evidence that the Board failed to give Denko's case proper review. *See id.* at 379 ("We are not willing, however, in the absence of [] evidence [of systemic violation by the BIA of its regulations] to infer . . . that the required review is not taking place."); *see also Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1289 (11th Cir. 2003) ("That a one-sentence order was entered is no evidence that the BIA member did not review the facts of [petitioner's] case."). We will not assume such a complete break-down in the system in the absence of tangible evidence to support such a conclusion.

Moreover, Denko's argument that the summary affirmance without opinion permitted by § 1003.1(a)(7) violates the mandate that agencies must set forth reasons for their decisions also fails because the IJ's opinion becomes the reasoned explanation needed for review. *Albathani*, 318 F.3d at 377 (noting that *Chenery* only requires the relevant agency, here the INS, to give reasons for its decisions, which may issue from either the BIA or an IJ). While Denko has a viable argument that the BIA's affirmance-without-opinion

procedure is distinguishable from an express adoption of the IJ's opinion and rationale, it also is true that a summary affirmance can be issued only when "the Board Member determines that the result reached in the decision under review was correct." 8 C.F.R. § 1003.1(a)(7). Thus, the BIA member agrees with the result reached by the IJ, and then also determines that any errors in the IJ's decision are harmless or nonmaterial and that the issue raised is controlled by precedent and is not a novel issue or that the legal and factual issues raised are insubstantial. By necessity, then, the BIA member must give the case his or her full consideration and assess the IJ's decision before the BIA member can determine that summary affirmance without opinion is the proper procedure.[9] So while Denko's case is not directly on point with those cases where the BIA affirms on the basis of the IJ's opinion, the cases nonetheless are similar in that both require agreement with the end-result as determined by the IJ and both decline to require the Board to issue its own opinion using different words to reach the same end-result. *See Guentchev*, 77 F.3d at 1038.

In response to Denko's due-process argument, the INS points out that although the regulations permit appeals to the Board, such review is not constitutionally compelled. The INS relies for support on the Seventh Circuit's opinion in *Guentchev*, which noted that, "[t]he Constitution does not entitle aliens to administrative appeals. . . . [Thus, t]he

---

[9] The American Immigration Law Foundation points out that the February 2002 proposals by the Attorney General included reducing the Board size from twenty-three to eleven members. Amicus Br. at 4; *see also* Lisa Getter & Jonathan Peterson, *Speedier Rate of Deportation Rulings Assailed*, Los Angeles Times, Jan. 5, 2003, at 1. This seemingly contradictory proposal intends to reduce the Board's backlog and the amount of time spent on each case while limiting the number of persons authorized to review rulings from the immigration judges. *Speedier Rate of Deportation Rulings Assailed*, *supra*. The article notes that two Board members each signed more than fifty cases in one day, which equates to "a decision nearly every 10 minutes if [one] worked a nine-hour day without a break." *Id.*

Attorney General could dispense with the Board and delegate [his] powers to the immigration judges, or could give the Board discretion to choose which cases to review." *Id.* at 1037-38 (holding in a case decided before streamlining was adopted that "the Board fulfills its duty by summarily affirming an immigration judge's opinion"); *see also Albathani*, 318 F.3d at 376 ("An alien has no constitutional right to any administrative appeal at all."). Accordingly, the Seventh Circuit has held that a reasoned decision by an administrative law judge and review by a court of appeals is sufficient to satisfy the requirements of due process. *Guentchev*, 77 F.3d at 1038. As have many circuits before us, we now join the recent trend of our sister circuits by concluding that the BIA's streamlining procedures do not themselves alone violate an alien's rights to due process. *Carriche*, 335 F.3d at 1012 (Ninth Circuit); *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003) ("Since we review directly the decision of the IJ when a case comes to us from the BIA pursuant to § 1003.1(a)(7), our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated."); *Mendoza*, 327 F.3d at 1289 (Eleventh Circuit); *Soadjede v. Ashcroft*, 324 F.3d 830, 832 (5th Cir. 2003); *Albathani*, 318 F.3d at 376-79 (First Circuit).

Likewise, it is not "a due process violation for the BIA to affirm the IJ's decision without issuing an opinion." *Carriche*, 335 F.3d at 1014. Even if the BIA would view the factual and legal issues differently from the immigration judge, the summary-affirmance-without-opinion rule renders the IJ's decision the final agency order, and we review that decision. Thus, Denko receives the "full and fair" review that she is entitled to receive. *Huicochea-Gomez*, 237 F.3d at 699; *see Georgis v. Ashcroft*, 328 F.3d at 967. Moreover, "[i]n functional terms, if the BIA does not independently state a correct ground for affirmance in a case in which the reasoning proffered by the IJ is faulty, the BIA risks reversal on appeal." *Albathani*, 318 F.3d at 378; *see also Tuhin v. Ashcroft*, No. 02-2661, 2003 WL 1342995, at *2 (7th Cir. Feb. 11, 2003)

(unpublished order) ("The BIA's summary affirmance of a flawed decision by an IJ, however, may lead us to conclude that the BIA's decision is insufficient."). Thus, we are not forced to guess at the rationale of the BIA, but instead we evaluate the IJ's explanation as that of the Board; the Board cannot rely on an unarticulated basis for its determination. *See Fed. Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397 (1974)("An agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself."). *See generally Albathani*, 318 F.3d at 377 (noting that "[t]he summary affirmance scheme does create . . . problems [for review], but they do not render the scheme a violation of due process or render judicial review impossible"); *see also Carriche*, 335 F.3d at 1014 ("[T]he streamlining procedures do not compromise our ability to review the INS's decision, to the extent we have jurisdiction to do so, because we can review the IJ's decision directly."). Thus, Denko's due process rights are not violated simply because the BIA did not issue a reasoned explanation.[10]

---

[10] Moreover, the review process offered under § 1003.1(a)(7) comports with the requirements of due process as defined in *Mathews v. Eldridge*, 424 U.S. 319 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (quotation omitted). The Court identified three factors to consider when determining whether administrative procedures comport with due process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Evaluating the *Mathews* factors in the present case, we believe that it is clear that Denko has a substantial interest in having her *in absentia* order of removal rescinded. Denko, however, has not shown how the streamlining procedures increase the risk that she will be deprived erroneously of her interest in remaining in the United States. *See generally Carriche*, 335 F.3d at 1015 ("[T]he alleged risks of erroneous

Separate from her attack on the statute's constitutionality, Denko also argues that use of the summary-affirmance procedures in this case was improper because her case did not meet the criteria for application of this procedure. Denko's main contention is that there are factual issues — whether Wojnar's letter was ambiguous, whether Denko would have attended the hearing, whether Denko was unable to understand the letter — that are not insubstantial and require review by a three-member panel. In response, the INS asserts that the Board's decision to review Denko's appeal using summary-affirmance procedures is insulated from review. Citing *Heckler v. Chaney*, 470 U.S. 821 (1985), the INS states that because the Administrative Procedure Act ("APA") governs judicial review of agency actions, judicial review is inappropriate when the "agency action is committed to agency discretion by law." *Id.* at 828 (quoting 5 U.S.C.

---

deprivation are mitigated through the regulatory structure itself. Petitioners receive a reasoned decision from the IJ and have the option to seek reconsideration from the BIA. . . . [I]n cases where the courts of appeal have jurisdiction, petitioners are also entitled to an additional level of review."). It is not at all clear that requiring more elaborate review by the BIA would secure Denko's interest in not being deported.

The INS has a strong interest in its procedures for accurate, efficient, and economical adjudication of immigration matters. The DOJ enacted this streamlining procedure in response to statistics showing that between 1984 and 1999, appeals and motions to the Board increased more than nine-fold. Streamlining, 64 Fed. Reg. at 56136. Other objectives of the DOJ in enacting this procedure included promoting uniformity in the IJ decisions, deciding cases in a timely fashion, assuring the correct disposition of cases, and reducing the BIA's backlog. *Id.* The Supreme Court has indicated its approval of agencies fashioning their own appropriate procedures: "'administrative agencies and administrators will be familiar with the industries which they regulate and will be in a better position than federal courts or Congress itself to design procedural rules adapted to the peculiarities of the industry and the tasks of the agency involved.'" *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 525 (1978) (quotation omitted). Denko has failed to show how more elaborate proceedings would better protect her interest in remaining in the United States, and thus has failed to overcome the government's strong interest.

§ 701(a)(2)). Interpreting this phrase using legislative history, the *Heckler* Court determined that judicial review is precluded "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Id.* at 830. The INS argues that a Board member's decision to streamline a case is a decision that has been committed to the agency's discretion because it involves "'a complicated balancing of a number of factors which are peculiarly within the expertise of the agency.'" Appellee's Br. at 19 (quoting *Heckler*, 470 U.S. at 831). Specifically, the INS argues that in order for the agency to determine that no novel or complex issues are raised it must evaluate the Board's caseload — a task ideally suited to the Board, not the court.

As an initial matter, this argument for committing this decision to the agency's discretion is doubtful because there are judicially manageable standards available to a reviewing court. Streamlining procedures are used only when the result reached by the IJ is correct, any errors are harmless or nonmaterial, and either the issue is controlled by precedent and does not require application to novel facts or the factual and legal questions are insubstantial and do not warrant three-member review. These factors straight from the regulation itself provide the necessary guidelines for judicial review. Moreover, the size of the BIA's caseload — a factor which the Board may be better equipped to assess — has no relevance in deciding which cases are appropriate for summary affirmance. That determination is made using the factors identified in § 1003.1(a)(7). Moreover, as maintained in a Seventh Circuit opinion, for many streamlined cases "it makes no practical difference whether the BIA properly or improperly streamlined review of [Denko's] case," because when "we review directly the decision of the IJ when a case comes to us from the BIA pursuant to [8 C.F.R. § 1003.1(a)(7)], our ability to conduct a full and fair appraisal

of [Denko's] case is not compromised." *Georgis*, 328 F.3d at 967 (footnote omitted).

Assuming, without deciding, that judicial review properly is employed to assess whether the BIA correctly designated a case for summary affirmance, Denko's argument that the summary-affirmance-without-opinion procedure was invoked improperly in her case nonetheless must fail. The IJ's decision to deny the rescission of Denko's *in absentia* order of removal was proper because Denko failed to appear for her scheduled hearing although she was warned on numerous occasions that her presence was required. Moreover, because Denko did not produce any evidence other than Wojnar's letter and Denko's affidavit to establish ineffective assistance of counsel, the factual and legal issues raised were insubstantial. Denko clearly did not take affirmative steps to accept Wojnar's offer to request an attendance waiver from the IJ, and Denko's self-serving affidavit did not give any indication that she would have prevailed in her removal proceedings if only she had had competent counsel. While it may be true that Denko misinterpreted Wojnar's letter due to Denko's language barrier, the IJ's conclusion that Denko should have been diligent to verify with Wojnar the status of Denko's alleged waiver seems more than appropriate considering the previous warnings which Denko does not suggest she failed to comprehend. Because the facts and legal issues of Denko's case fit precisely within the boundaries of § 1003.1(a)(7), the Board properly invoked the summary-affirmance-without-opinion procedures.

## III. CONCLUSION

Based on the foregoing conclusions, we **AFFIRM** the judgment of the IJ and uphold § 1003.1(a)(7)'s streamlining procedures as constitutional and consistent with administrative-law precedent.