NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0060n.06
Filed: January 26, 2005

Nos. 02-4415/4416/4417

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GHULAM MEHBOOB, et. al., | ) | |
| | ) | |
| *Petitioners*, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| IMMIGRATION AND NATURALIZATION SERVICE, | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| *Respondent*. | ) | |

BEFORE: COLE, ROGERS, Circuit Judges; COHN, District Judge.[*]

**R. GUY COLE, JR., Circuit Judge.** This is an appeal from the Board of Immigration

Appeals' ("BIA") decision to affirm, without opinion, the decision of an Immigration Judge ("IJ")

who denied the asylum and withholding of removal claims under the Convention Against Torture

("Torture Convention") of the petitioner, his wife, and their daughter. For the reasons discussed

below, we **DENY** the petition for review.

## I. BACKGROUND

In May 1994, the lead petitioner, Ghulam Mehboob, his wife, and their daughter entered the

United States from Bangladesh via Canada, with the assistance of a smuggler. Because the

petitioner and his family entered without inspection, the Immigration and Naturalization Service

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

initiated removal proceedings against them. The petitioner admitted deportability but filed applications for asylum and withholding of removal under the Immigration and Nationality Act, and withholding of removal under the Torture Convention, based on Mehboob's alleged hardships in Bangladesh. In the alternative, Mehboob requested voluntary departure. The immigration status of Mehboob's wife and daughter depend upon his status.

Mehboob claims that he was an active member of the Jatiyo Party in Bangladesh for approximately eight years, attending weekly meetings and monthly rallies. Although Mehboob did not describe the goals of his party in detail, it is clear that the Jatiyo Party was an opponent of the Bangladesh National Party ("BNP"), which was in power in 1994.

According to Mehboob, he attended a large protest rally on March 3, 1994, and was in front of his group when he was shot in the chest. Mehboob did not see who shot him but believes that it was the BNP. After he returned home from the hospital, Mehboob claims that BNP activists and police officers came to his home approximately three times a month to harass him. However, he was not present during any of these visits; instead, he learned about the visits through relatives and other Jatiyo Party members. Mehboob also told the IJ that members of the BNP would throw stones at him when he traveled home from work, would stop potential customers from entering his grocery store, and would verbally harass him and his wife, threatening to kill him if he continued to support the Jatiyo Party.

On March 30, 1994, Mehboob's grocery store burned down. Mehboob alleges that his brother told him that he saw members of the BNP set fire to the store, although Mehboob did not submit any such statements from his brother. Mehboob admits that he did not tell the police about

the fire because he was afraid of contacting them. Shortly thereafter, Mehboob and his family fled Bangladesh.

During the removal proceedings, Mehboob testified that he fears returning to Bangladesh because he believes that the faction of the Jatiyo Party with which he was associated is currently being suppressed by the Awami League (the group in power as of the hearing), and that the league is using a "special order" division to arrest and harass people at any time without any standards. Mehboob claimed that since the Awami League came into power, the Jatiyo Party and the BNP have formed an alliance in opposition to the league. Mehboob told the IJ that if he were to return to Bangladesh, he would resume his political activity and that would put him in danger of persecution.

Mehboob did not present any specific evidence to support his depiction of the current political status of Bangladesh, aside from his own testimony which relayed information he obtained from phone calls with friends and relatives in Bangladesh. The parties submitted to the IJ a 2000 Country Report for Bangladesh produced by the State Department, which made no mention of the persecution of any Jatiyo Party members that year, and a 1998 Profile Report containing the Department's opinion that it does "not believe that a vast majority of Jatiyo Party members, or members of any other Bangladeshi political parties, would be targeted for mistreatment on account of their political affiliation upon their return to Bangladesh." The report does indicate that members of the BNP might be currently persecuted by the Awami League. Mehboob's response was that the 1998 report relates old information and that the situation in Bangladesh, according to his relatives, is quite different today. Nevertheless, the IJ was not convinced by Mehboob's response to the State Department reports.

The IJ determined that Mehboob had not sufficiently established that he suffered past persecution, and that even if he had, the political conditions have changed in Bangladesh since Mehboob fled because the BNP, which is the party that Mehboob claims persecuted him, is no longer in power. The IJ concluded that the Awami League is currently in power in Bangladesh and that the Jatiyo Party (Mehboob's party) is a member of the League. Thus, the IJ found that Mehboob would not fear future persecution if returned to Bangladesh because his party is now in a position of power. The IJ also found that Mehboob was not more likely than not to be tortured if he returned to Bangladesh. Accordingly, the IJ denied both the asylum petition and the petition for withholding of removal under the Act and the Torture Convention. This appeal followed.

Petitioner now argues: (1) that the BIA violated his due process rights by summarily affirming the IJ's decision without writing a separate opinion; and (2) that the IJ erred in finding that Mehboob did not prove that he suffered past persecution and would suffer future persecution if he returned to Bangladesh.

## II. ANALYSIS

### A. BIA's Affirmance Without Opinion

In an effort to streamline BIA workload, the Attorney General adopted the affirmance without opinion ("AWO") procedure in 1999. Under 8 C.F.R. § 1003.1(e)(4), the BIA may choose for a single Board member to review an appeal from an IJ's decision, rather than the usual three-member review. The regulation requires the single Board member to issue an AWO if:

> [T]he Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to

a novel factual situation; or (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

*Id.* Petitioner initially argued that the AWO procedure itself violates due process because a boilerplate opinion by the BIA fails to provide applicants with a rational explanation of the BIA's denial and is therefore always an abuse of discretion. However, after petitioner filed his opening brief, we decided this very issue in *Denko v. I.N.S.*, 351 F.3d 717 (6th Cir. 2003), and upheld the AWO procedure. This Court stated that:

> [I]t is not a due process violation for the BIA to affirm the IJ's decision without issuing an opinion . . . [e]ven if the BIA would view the factual and legal issues differently from the immigration judge, the summary-affirmance-without-opinion rule renders the IJ's decision the final agency order, and we review that decision . . . . Moreover, in functional terms, if the BIA does not independently state a correct ground for affirmance in a case in which the reasoning proffered by the IJ is faulty, the BIA risks reversal on appeal . . . Thus, we are not forced to guess at the rationale of the BIA, but instead we evaluate the IJ's explanation as that of the Board . . .

*Id.* at 730 (internal quotations omitted). Consequently, petitioner conceded that the AWO procedure is facially valid. However, he argues that the BIA improperly invoked the AWO procedure in his case, because his case involved substantial factual issues.

As we will explain in Part B., the IJ's findings, that Mehboob did not prove past persecution and that the conditions in Bangladesh have fundamentally changed since Mehboob fled, are not based on factual issues that are so substantial as to warrant a written opinion by the BIA. Moreover, the IJ's decision was correct, and any errors that the IJ may have committed are harmless or nonmaterial. Because the facts and legal issues presented by Mehboob's case fit squarely within the

boundaries of 8 C.F.R. § 1003.1(e)(4), the BIA properly invoked the summary affirmance procedure in this case.

## B. Petitioner's Asylum Claim

Because the BIA summarily affirmed the IJ's decision, we must look to the reasoning articulated in the IJ's opinion. *Denko*, 351 F.3d at 723. An applicant may obtain asylum under Section 208(a) of the Immigration and Nationality Act if he shows that he is a "refugee," meaning that he is unwilling or unable to return to his home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The applicant must establish that he has both a subjective and objective fear of persecution. *Ivezaj v. I.N.S.*, 84 F.3d 215, 221 (6th Cir. 1996). The standard for reviewing the IJ's factual findings is deferential: factual findings are conclusive, unless the court determines that the evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 484 (1992).

### 1. Past Persecution

Mehboob claims that substantial evidence supports his fear of persecution because he was shot while protesting the government, his grocery store was burned down, and he had many unwelcome visits by the BNP/police. The IJ, however, found Mehboob's evidence of these events to be insufficient.

First, the IJ noted that Mehboob did not see or have any personal knowledge of who shot him at the protest rally, and he failed to provide any documents from eyewitnesses supporting his claim that a BNP member shot him. Although Mehboob provided letters from a doctor confirming that Mehboob had suffered from a bullet wound, the IJ determined that this evidence proved only that Mehboob had been shot, not who shot him. The IJ found Mehboob's bare assertion that the person who shot him *must* have been a BNP member to be vague and lacking in credibility.

Mehboob argues that the IJ required an unreasonable amount of corroboration, particularly because the IJ asked Mehboob the name of the person who shot him, the name of a fellow protestor who was also shot, as well as the type of gun that was used to shoot him. While it may well be unreasonable to require these particular details, it is not unreasonable for the IJ to try to elicit *some* corroboration for Mehboob's claim by asking him specific questions. This is particularly true when the petitioner did not supply any evidence to support directly his claim of persecution. Here, Mehboob presented no evidence suggesting that he was a target at the rally, or that it was a BNP member who shot him. Given that the only proof that the IJ had before him was that Mehboob was shot during a political rally, we are not compelled to find that the shooting is evidence of the BNP's persecution of Mehboob.

The IJ also found that Mehboob did not supply sufficient evidence to prove that his grocery store was burned down by the BNP and that he was harassed at home by the BNP or the police. In support of the claim regarding the store, Mehboob offered two brief letters written by individuals in Bangladesh, essentially stating that Mehboob's shop was burned by his "political rivals/enemies." The IJ found that the letters lacked credibility and were ultimately unpersuasive because neither of

them explained how the authoring individuals had obtained their information, whether through personal knowledge or rumors. Additionally, both letters contained the exact same language, including the same grammatical errors, causing some doubt regarding the veracity and independence of their inception. Mehboob also told the IJ that his brother saw the BNP burn down the grocery store; however, Mehboob provided no corroborating evidence by his brother even though his brother lives in Italy and was by all accounts reachable. In sum, Mehboob presented no direct evidence linking the BNP with the burning of his store, save for the brief letters which lack credibility and contain little detail. Therefore, as for Mehboob's contention that the BNP burned down his store, there is simply not enough evidence in the record to compel us to find that the BNP persecuted Mehboob in this instance.

Similarly, the IJ determined that Mehboob failed to demonstrate that he was harassed by the BNP, because he was not present during their purported visits to his home, and because he failed to provide corroborating evidence from his uncle, who Mehboob claims was present. The IJ determined that Mehboob's testimony was "pure unadulterated speculation," because his statements, even if true, indicated no personal knowledge that the BNP visited his home to harass him. Mehboob failed to present sufficient evidence on this point, as his evidence largely revolves around his own testimony, that he heard from others that members of the BNP attempted to visit his home.

The IJ might have viewed the petitioner's testimony and evidence in a more favorable light. However, the question before us is not whether the IJ could have found for the petitioners, but rather, whether "no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 484. Aside from his own testimony, which was largely devoid of any personal

knowledge of who caused the alleged acts of persecution, Mehboob did not present the type of evidence which would compel this Court to reverse the IJ's factual determinations. Accordingly, we affirm the IJ's findings that Mehboob did not present sufficient evidence to prove that he was persecuted in Bangladesh.

*2. Future Persecution*

Because Mehboob failed to establish past persecution, there is no presumption in his favor regarding future persecution under 8 C.F.R. § 208.13. Here, the IJ found that even assuming a presumption of a well-founded fear of future persecution, such a presumption would have been rebutted by the evidence presented by the State Department's 2000 Country Report. The Country Report indicated that the government in Bangladesh has changed since 1994, and that the Awami League coalition party took over in 1996, of which Mehboob's Jatiyo Party was a member. Nothing in the Country Report indicates that members of the Jatiyo Party have been persecuted by the Awami League since this time, although the report does indicate that the Awami League may now be persecuting members of the BNP. Therefore, in light of these political changes, petitioner has not carried his burden of proving that he has a well-founded fear of persecution if he were to return to Bangladesh.

Petitioner argues that there has been only a temporary change in leadership in Bangladesh, not a fundamental change in the widespread practice of persecuting opponents of the incumbent leadership. Therefore, Mehboob argues that, as soon as a party which opposes the Jatiyo is in place, he could easily be persecuted. This analysis is not sufficient to support a finding of a well-founded fear of future persecution, because Mehboob's claim of future persecution is based solely on

- 9 -

speculation of what might happen in the political structure of Bangladesh sometime in the future. The immigration laws require a highly specific showing to be made by the asylum-seeker. *See, e.g.*, *M.A. v. INS*, 899 F.2d 304, 311 (4th Cir. 1990) (*en banc*) (holding that a well-founded fear of persecution requires that the petitioner's fear has "some basis in the reality of the circumstances," and is supported by "specific, concrete facts"). It is not enough for an applicant to show that his government persecutes its opponents and that violence permeates the system in his home country, if he does not prove that he in fact is one of those opponents who would likely be persecuted. Consequently, the IJ correctly held that the petitioner did not satisfy his burden of proving that he would have a well-founded fear of persecution if he returned to Bangladesh.

Further, the IJ correctly denied withholding of removal under the Immigration and Nationality Act and the Torture Convention, because petitioner did not prove he was more likely than not to be persecuted or tortured if returned to Bangladesh. *See* 8 C.F.R. § 208.16(b)(2) (withholding under the Act); 8 C.F.R. § 208.16(c)(2) (withholding under the Torture Convention).

## V. CONCLUSION

For the reasons stated above, we hereby **DENY** the petition for review.