<u>NOT RECOMMENDED FOR PUBLICATION</u>
File Name: 20a0166n.06

No. 19-3820

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 23, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| GLENY LLESENIA LINO-SABIO; GLENY ROSARIO SUASO-LINO; ASHLEY YARELI SUASO-LINO, | ) ) ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioners, | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| WILLIAM P. BARR, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

BEFORE: GUY, THAPAR, and BUSH, Circuit Judges.

PER CURIAM. Gleny Llesenia Lino-Sabio and her two minor children petition this court for review of an order of the Board of Immigration Appeals (BIA) summarily affirming the denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As set forth below, we **DENY** the petition for review.

Lino-Sabio and her two minor children, natives and citizens of Honduras, entered the United States without inspection in July 2016. Shortly after their entry, the Department of Homeland Security served Lino-Sabio and her children with notices to appear in removal proceedings, charging them with removability as immigrants who, at the time of application for admission, were not in possession of valid entry documents. *See* 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1227(a)(1)(A). Lino-Sabio appeared before an immigration judge (IJ) and conceded removability as charged.

Lino-Sabio filed an application for asylum, withholding of removal, and CAT protection and included her children as derivative beneficiaries. Lino-Sabio asserted her fear of members of the Mara 18 gang in Honduras and based her claims for asylum and withholding of removal on her race, Garifuna, and on her membership in an alleged particular social group, the family of Cesar Suazo. At the hearing on her application, Lino-Sabio testified that Cesar Suazo, her husband's nephew, was taken off a bus and killed by gang members in September 2013. Two years later, in October 2015, two gang members came to Lino-Sabio's house and asked her for money. When Lino-Sabio did not understand the gang members because they were speaking Spanish and she speaks Garifuna, the gang members hit her on her leg. Lino-Sabio testified that she fled with her children to her mother's house in another area of Honduras, where they stayed for about three months. While Lino-Sabio was staying with her mother, gang members there asked her for money and threatened to "kill me like they killed my nephew" if she did not pay. Lino-Sabio testified that she is afraid that, if she returns to Honduras, gang members will kill her and her children.

At the conclusion of the hearing, the IJ denied Lino-Sabio's application for asylum, withholding of removal, and CAT protection. With respect to her asylum claim, the IJ found that Lino-Sabio had failed to demonstrate that the gang members targeted her on account of her Garifuna race or her family connection to Cesar Suazo and that she was more likely "a victim of a criminal enterprise for financial gain." Because she had failed to satisfy the lower burden of proof for asylum, the IJ determined, Lino-Sabio had necessarily failed to satisfy the more stringent standard for withholding of removal. As for her claim for CAT protection, the IJ found that Lino-Sabio had failed to demonstrate that the gang members were acting in any official capacity or that the Honduran government approved of or tolerated torture. The IJ concluded that Lino-Sabio's evidence fell short of demonstrating that it is more likely than not that she will be tortured if removed to Honduras. The IJ ordered that Lino-Sabio and her children be removed to Honduras.

Lino-Sabio appealed the IJ's decision to the BIA but did not file a brief. The BIA affirmed the IJ's decision without opinion under 8 C.F.R. § 1003.1(e)(4). This timely petition for review followed.

Lino-Sabio first argues that the BIA's streamlining procedure, which provides for summary affirmance of the IJ's decision without opinion, violates due process. This argument is foreclosed by our decision in *Denko v. INS*, 351 F.3d 717, 729-30 (6th Cir. 2003), holding that the BIA's streamlining procedure does not violate a petitioner's due process rights. Citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947), Lino-Sabio next asserts that, when an administrative action is subject to judicial review, the agency must provide a reasoned basis for its decision. But this argument "fails because the IJ's opinion becomes the reasoned explanation needed for review." *Denko*, 351 F.3d at 729. Lino-Sabio further asserts that the BIA's order does not indicate how her case met the criteria for summary affirmance under 8 C.F.R. § 1003.1(e)(4). However, "'it makes no practical difference whether the BIA properly or improperly streamlined review of [Lino-Sabio's] case,' because when 'we review directly the decision of the IJ when a case comes to us from the BIA pursuant to [8 C.F.R. § 1003.1(e)(4)], our ability to conduct a full and fair appraisal of [her] case is not compromised.'" *Denko*, 351 F.3d at 732 (quoting *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003)). The BIA's streamlining procedure did not violate Lino-Sabio's due process rights or administrative law principles.

Lino-Sabio next challenges the denial of her application for asylum, withholding of removal, and CAT protection. Where, as here, "the BIA affirms the IJ without issuing its own opinion, we review the IJ's opinion." *Ndrecaj v. Mukasey*, 522 F.3d 667, 672 (6th Cir. 2008) (citing *Denko*, F.3d at 723). We review the agency's factual determinations for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the

contrary." 8 U.S.C. § 1252(b)(4)(B); *see Bi Qing Zheng v. Lynch*, 819 F.3d 287, 293-94 (6th Cir. 2016).

Lino-Sabio, as an applicant for asylum, must demonstrate "that she meets the definition of a 'refugee,' which means a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). Lino-Sabio must establish that a protected ground "was or will be at least one central reason for persecuting" her. 8 U.S.C. § 1158(b)(1)(B)(i). According to Lino-Sabio, the IJ erred in concluding that she had failed to demonstrate a nexus between any persecution and a protected ground.

First, as to race, the IJ determined that the evidence did not support Lino-Sabio's claim that she was approached by members of the Mara 18 gang because she is Garifuna. Lino-Sabio presented evidence that Garifuna people face discrimination in Honduras but presented no evidence that gang members target Garifuna people in particular or targeted her because she is Garifuna. When asked why she was singled out by gang members asking for money, Lino-Sabio responded, "I don't know." Although Lino-Sabio testified that the gang members hit her when she could not understand them because they were speaking Spanish, this evidence does not compel the finding that the gang members harmed her because she is Garifuna.

Next, as to membership in a particular social group, the IJ found that it was "illogical and implausible" that Lino-Sabio was targeted on account of her family connection to Cesar Suazo. Lino-Sabio testified that members of Cesar Suazo's family still live in Honduras, but she was unable to identify any other family members who have been harmed by gang members. *See Bonilla-Morales*, 607 F.3d at 1138 (denying petition for review involving family-based particular social group for lack of nexus and noting "the record is devoid of any evidence that [the

petitioner's] sons have suffered any mistreatment by the gang since [the petitioner] left the country").

In support of her petition for review, Lino-Sabio asserts that her testimony should be deemed credible and that her testimony could lead to the conclusion that her feared harm is on account of her Garifuna race and her membership in Cesar Suazo's family. But Lino-Sabio fails to point to any evidence that *compels* that conclusion. Substantial evidence supports the IJ's findings that Lino-Sabio had failed to demonstrate a nexus to a protected ground and that she was more likely "a victim of a criminal enterprise for financial gain." By failing to establish her eligibility for asylum, Lino-Sabio necessarily failed to satisfy the more stringent standard for withholding of removal. *See Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009).

Unlike a claim for asylum or withholding of removal, a claim for CAT protection does not require a nexus to a protected ground. *See Mapouya v. Gonzales*, 487 F.3d 396, 414 (6th Cir. 2007). To be eligible for CAT protection, Lino-Sabio must demonstrate that it is more likely than not that, if she is removed to Honduras, she will suffer torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); *see id.* § 1208.16(c)(2).

Lino-Sabio asserts that the evidence demonstrates that she will be subject to torture by gang members with the acquiescence of the Honduran government because the police and other public officials do not help Garifuna people. Lino-Sabio did not present any evidence that public officials were involved or acquiesced in her extortion by gang members, instead testifying that she did not report the gang members to the police because she believes that the police work with the gangs. The 2016 Human Rights Report for Honduras submitted by Lino-Sabio indicates that the government has made efforts to reduce the pervasive societal violence and political corruption in the country and has taken steps to investigate and arrest perpetrators of violence against members

of indigenous groups such as the Garifuna people. This evidence undermines Lino-Sabio's claim that the government would acquiesce in any torture if she returns to Honduras. *See Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015) (holding that the government's alleged inability "to control the gangs does not constitute acquiescence"); *Rreshpja v. Gonzales*, 420 F.3d 551, 557 (6th Cir. 2005). The record does not compel the conclusion that Lino-Sabio would more likely than not be tortured with the acquiescence of the Honduran government.

For these reasons, we **DENY** Lino-Sabio's petition for review.