**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0176n.06
Filed: March 7, 2005

No. 03-3372

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|                                   |     |                                |
|-----------------------------------|-----|--------------------------------|
| VESNA DJELJEVIC,                  | )   |                                |
|                                   | )   |                                |
| **Petitioner,**                   | )   | **ON PETITION FOR REVIEW**     |
|                                   | )   | **OF AN ORDER OF THE**         |
| v.                                | )   | BOARD OF IMMIGRATION           |
|                                   | )   | APPEALS                        |
| ALBERTO GONZALES, Attorney        | )   |                                |
| General,                          | )   |                                |
|                                   | )   | **O P I N I O N**              |
| **Respondent.**                   | )   |                                |
| _____ | )   |                                |

**Before:  KENNEDY, MOORE, and SUTTON, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Petitioner Vesna Djeljevic ("Djeljevic")

petitions for a review of an order of the Board of Immigration Appeals ("BIA") affirming the denial

of Djeljevic's claims for asylum, withholding of removal, and relief under the Convention Against

Torture.  Specifically, Djeljevic contends:  (1) that the streamlining procedures used by the BIA in

disposing of Djeljevic's appeal violated Djeljevic's due process rights, and (2) that the Immigration

Judge ("IJ") erred in finding Djeljevic incredible and in determining that she did not have a well-

founded fear of persecution if she were to be removed to Serbia/Montenegro.  For the reasons set

forth below, we **DENY** the petition for review.

## I.  FACTUAL AND PROCEDURAL HISTORY

In February 1994, Djeljevic, an ethnic Albanian woman, immigrated to the United States from Montenegro, part of the former Yugoslavia.[1]  It appears that sometime in 1994 or 1995, Djeljevic may have filed an application for asylum on the basis that she had participated in demonstrations against the Serbian government; however, there appears to be no record of a hearing being conducted or any ruling on this asylum application being issued.  In February 1997, the Immigration and Naturalization Service ("INS") charged Djeljevic with deportation for:  (1) remaining in the United States beyond the six-month period she was allowed as a nonimmigrant visitor for pleasure, 8 U.S.C. § 1227(a)(1)(B); (2) presenting a false passport, 8 U.S.C. § 1182(a)(6)(C)(i); and (3) being convicted of a crime involving moral turpitude carrying a possible sentence of at least one year's imprisonment, i.e., retail fraud, 8 U.S.C. § 1182(a)(2)(A)(i)(I).

Djeljevic then filed an application for asylum in March 1998 in which she claimed that, if she were returned to Serbia/Montenegro, "she would probably be detained at the airport, jailed and would be subjected to persecution" because of her status as an ethnic Albanian, a Roman Catholic, and a woman.  Joint Appendix ("J.A.") at 227 (July 2000 Application for Asylum and Withholding of Removal at 4).  Djeljevic's asylum application also includes a handwritten notation stating that, in September 1993, Djeljevic's father had been arrested and imprisoned for three months for refusal to fight in the Bosnian war; it is unclear, however, when this information was added to the application.  In July 2000, Djeljevic appeared before an IJ, and at the beginning of the hearing, Djeljevic (who claimed to be fluent in English) was given an opportunity to review, correct, and sign

---

[1]Montenegro is now part of the republic Serbia/Montenegro, which claims to be the successor state to the former Yugoslavia and which refers to itself as the "Federal Republic of Yugoslavia."

her asylum application. During the hearing, Djeljevic testified as to her father's arrest and imprisonment for draft evasion, but for the first time claimed that, when the police had come to arrest her father, they had cut her leg with a bayonet and attempted to rape her. Djeljevic also stated during the hearing that she feared to return to Serbia/Montenegro because she would face retribution (possibly including imprisonment, beatings, or rape) for her father's refusal to comply with his conscription order.

After reviewing Djeljevic's asylum application, the hearing testimony, and the record evidence, the IJ concluded that Djeljevic was not credible and that the conditions in Serbia/Montenegro were such that Djeljevic did not have a well-founded fear of persecution should she return. The IJ denied Djeljevic asylum, withholding of removal, and relief under the Convention Against Torture and ordered Djeljevic removed to Serbia/Montenegro. Djeljevic appealed the IJ's decision to the BIA, and a single member of the BIA summarily affirmed the IJ's decision without opinion. Djeljevic now appeals to this court.

## II. ANALYSIS

### A. Due Process Challenge to BIA Streamlining Procedures

Djeljevic's principal argument on appeal is that the streamlining procedures followed by the BIA (specifically, the assignment of cases to single Board members and the issuance of summary affirmances without opinions) violate due process. We conclude that such an argument affords Djeljevic no relief.

In 1999, the Department of Justice adopted a series of streamlining procedures (now codified in 8 C.F.R § 1003.1) for the handling of immigration appeals to the BIA. The regulations provide for, *inter alia*, the assignment of appeals to single BIA members and the summary affirmance of IJ

3

decisions without issuance of an opinion setting forth the BIA's reasoning. *See* 8 C.F.R. §§ 1003.1(e)(4) and (6). Djeljevic contends that these streamlining procedures lead to "rubber stamping" of IJ decisions by the BIA and prevent cases from receiving fair administrative and judicial review. In *Denko v. INS*, we considered and rejected a similar due process challenge to the BIA's streamlining procedures. 351 F.3d 717, 729-30 (6th Cir. 2003) ("As have many circuits before us, we now join the recent trend of our sister circuits by concluding that the BIA's streamlining procedures do not themselves alone violate an alien's rights to due process. . . . Likewise, it is not a due process violation for the BIA to affirm the IJ's decision without issuing an opinion.") (internal quotation marks and citations omitted). As we explained in *Denko*, without "tangible evidence" that the BIA did not properly review a case, "[w]e will not assume such a complete break-down in the system" has occurred based merely on the nature of the streamlining provisions and caseload statistics. *Id.* at 728-29. In addition, because a "BIA member must give the case his or her full consideration and assess the IJ's decision before the BIA member can determine that summary affirmance without opinion is the proper procedure," the summary affirmance provision does not prevent adequate review by the BIA. *Id.* at 729. We also noted in *Denko* that the BIA's issuance of summary affirmances does not impede our review of BIA decisions because "the summary-affirmance-without-opinion rule renders the IJ's decision the final agency order, and we review that decision." *Id*. at 730. Thus, based on our prior decision in *Denko*, Djeljevic's due process challenge to the BIA's handling of her case lacks merit.[2]

_____

[2]In *Denko*, we did not resolve the question of whether we may review the BIA's decision that a particular case meets the criteria set forth in 8 C.F.R. § 1003.1(e)(4) for summary affirmance without opinion. *See Denko v. INS*, 351 F.3d 717, 732 (6th Cir. 2003). Because Djeljevic has raised only a generalized due process attack on the BIA's use of summary affirmances without opinions and has not asserted that her case is ineligible for such disposition, we need not address this

**B. Substantial Evidence Review**

Djeljevic's second argument on appeal is that the IJ and the BIA erred in denying her claims for asylum, withholding of removal, and relief under the Convention Against Torture. To qualify as a refugee eligible for asylum, an applicant must demonstrate that he or she "is unable or unwilling to return to his [or her] home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)). A showing of well-founded fear of persecution requires:

> (1) that [the applicant have] a fear of persecution in his home country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) that there [be] a reasonable possibility of suffering such persecution if [the applicant] were to return to that country; and (3) that [the applicant be] unable or unwilling to return to that country because of such fear.

*Id.* Applicants who have suffered past persecution are presumed to have a well-founded fear of persecution, but "this presumption may be rebutted by the government if it shows by a preponderance of the evidence that conditions in the country have changed so fundamentally that the applicant no longer has a well-founded fear of persecution." *Singh v. Ashcroft*, — F.3d —, No. 03-3546, 2005 WL 291515, at *4 (6th Cir. Feb. 8, 2005). The ultimate decision of whether to grant asylum to a refugee remains in the discretion of the Attorney General. *Id.* Withholding of removal is mandatory, however, if an applicant demonstrates a clear probability "that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b); *see INS v. Stevic*, 467 U.S. 407, 430 (1984) (holding that "clear probability of persecution" standard

issue here.

5

applies to claims for withholding of removal); *Singh*, 2005 WL 291515, at \*4 ("Because an alien must meet a higher burden in establishing a right to withholding of removal than in demonstrating asylum eligibility, an alien who fails to qualify for asylum necessarily does not qualify for withholding of removal."). An applicant may also obtain relief under the Convention Against Torture if the applicant shows "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R § 208.16(c)(2).

When reviewing IJ and BIA dispositions of asylum, withholding of removal, and Convention Against Torture claims, we must determine whether substantial evidence supports the IJ's and BIA's factual findings, and we are not permitted to reverse such findings "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)); *see Singh*, 2005 WL 291515, at \*3; *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (noting that adverse credibility determinations are entitled to "substantial deference"). Here, the IJ's conclusion that Djeljevic was not entitled to relief rested on the IJ's finding that Djeljevic was not credible and that the record evidence did not establish that Djeljevic personally had a well-founded fear of persecution if removed to Serbia/Montenegro. Because the evidence before us does not compel a contrary conclusion, we must deny Djeljevic's petition for review.

In denying Djeljevic's claims, the IJ found that Djeljevic's testimony included unexplained inconsistencies and omissions and thus lacked credibility. In support of this finding, the IJ first noted that Djeljevic did not allege in her asylum applications that the police had cut her leg and had attempted to rape her, but rather made such claims for the first time during the hearing. The IJ also commented on the fact that Djeljevic's first asylum application, apparently filed shortly after her

arrival in the United States, relied on "a totally different claim" for relief than the ones proffered by Djeljevic in her second asylum application and during the hearing. J.A. at 24 (IJ Op. at 8). The IJ further found that Djeljevic's explanations for these inconsistencies and omissions (i.e., that she had not participated in the preparation of her first asylum application and that she mistakenly thought that she could not supplement her second asylum application before the hearing) were implausible and that these defects were particularly troubling given that Djeljevic was well-educated (having attended schools in Serbia/Montenegro and community college in the United States) and had demonstrated a good comprehension of English during the hearing. The IJ also cited Djeljevic's failure to produce any corroborating evidence in support of her claims as undermining her credibility, particularly in light of the fact that Djeljevic's father (whose draft evasion figured prominently in Djeljevic's claims) lives in Michigan and could have appeared at the hearing or supplied an affidavit. The IJ finally noted that, although Djeljevic had presented evidence recounting Yugoslavia's troubled past, reports on Serbia/Montenegro issued by the State Department in 1998 and 1999 undermined the credibility of Djeljevic's claims and rebutted any possible fear of future persecution. Indeed, the IJ found, the reports indicated that the situation facing ethnic Albanians in Montenegro is "relatively benign," that amnesty for draft evaders had been declared on multiple occasions, that freedom of religion is "generally respect[ed]," and that there was no support for claims of gender persecution. J.A. at 25-26 (IJ Op. at 9-10).

On appeal, Djeljevic has not pointed to any particular testimony or evidence in the record that demonstrates that the IJ's findings lack substantial evidentiary support, and, after reviewing the record in this case, we conclude that there is no evidence compelling us to find Djeljevic entitled to relief. Djeljevic's claims for asylum, withholding of removal, and relief under the Convention

7

Against Torture rely almost exclusively on Djeljevic's testimony, and we cannot conclude that the IJ erred in finding such testimony incredible. The inconsistencies and omissions in Djeljevic's asylum applications and her hearing testimony cited by the IJ relate to the core allegations of Djeljevic's claims. *See Sylla*, 388 F.3d at 926. Moreover, the IJ was not unreasonable in rejecting Djeljevic's explanations for the deficiencies in her asylum applications, particularly in light of the fact that Djeljevic was instructed to review her second asylum application and to make any necessary corrections before the start of the hearing. The IJ also acted reasonably in noting Djeljevic's failure to provide any corroborating evidence, especially given that Djeljevic's father and mother both live in Michigan and that, in prior proceedings, the IJ had recommended that Djeljevic bring any available witnesses to her asylum hearing. *See Dorosh v. Ashcroft*, — F.3d —, No. 03-3246, 2004 WL 3187917, at *2-3 (6th Cir. Dec. 20, 2004). Finally, although Djeljevic presented evidence documenting the tragic history of the former Yugoslavia, this evidence does not speak to Djeljevic's individualized, subjective fear of persecution and does not mandate a finding that the present conditions in Montenegro would lead Djeljevic, as an ethnic Albanian, Roman-Catholic woman, to have a well-founded fear of persecution. *See Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998) ("An applicant's fear of persecution must be both subjectively genuine and objectively reasonable. As applicant must therefore actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an objective situation under which his fear can be deemed reasonable.") (internal quotation marks and citations omitted).

In sum, substantial evidence supports the IJ's determination that Djeljevic has failed to establish that she has a well-founded fear of persecution if removed to Serbia/Montenegro; thus, Djeljevic is ineligible for asylum or withholding of removal. In addition, the Convention Against

Torture affords Djeljevic no relief because she has not shown that it is more likely than not that she will be tortured if she returns to Serbia/Montenegro. Thus, we conclude that the record before us furnishes no ground upon which a petition for review can be granted.

### III.  CONCLUSION

For the reasons set forth above, Djeljevic's petition for review of the BIA's order affirming the denial of asylum, withholding of removal, and relief under the Convention Against Torture is **DENIED**.