File Name: 06a0121n.06
Filed: February 14, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-3178

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

NAXHIDE KOXHA,

     Petitioner,

v.

ALBERTO R. GONZALES,

     Respondent.

ON APPEAL FROM THE
BOARD OF IMMIGRATION
APPEALS

_____/

Before:     MERRITT, MARTIN, and GILMAN, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge. Naxhide Koxha, representing herself and her two

children in this action, petitions this Court for review of the Board of Immigration Appeals's

summary affirmance of the immigartion court's decision to deny her application for asylum,

withholding of removal, and relief pursuant to the United Nations's Convention Against Torture.

 Additionally, Koxha challenges the constitutionality of the Board of Immigration Appeals's

procedure of affirmance without an opinion. Based on the following, this Court denies the petition

for review.

I.

     Koxha entered the United States in Chicago on July 9, 2002. She applied for asylum on

September 23. On November 7, Koxha was sent a Notice to Appear. At the Master Calendar

hearing on March 11, 2004, Koxha admitted that she and her two children were removable. After a hearing on May 3, the immigration judge denied the application for relief on July 13. The Board of Immigration Appeals affirmed the decision without opinion on January 18, 2005. A timely petition for review was filed in this Court on February 15.

Naxhide Koxha is a citizen of Albania. According to her testimony given at the hearing, Koxha and her family have been the subject of persecution in Albania based on their political beliefs. She joined the Democratic Party with her husband in 1990, and they allegedly held positions of power within the party beginning in 1996. On December 20, 1999, Koxha's husband was shot and he remained hospitalized until January 13, 2000. Koxha, along with her husband and other members of the Democratic Party, were prevented from attending a demonstration on February 26, 2000. They were allegedly held for 2-3 hours and beaten by the police.

On July 1, 2000, Koxha's son and some friends attempted to put up campaign posters for Democratic Party candidates. The police saw this, tore up their posters, and took them into custody for approximately seven hours. Upon their release, the boys made additional attempts to put the posters up and each time were arrested and allegedly beaten. On October 7, Koxha's husband was participating in a political protest when he was shot and killed by masked men. Finally, on October 21, 2000, Koxha's daughter was the target of an attempted kidnaping.

II.

*A. Review of the Asylum Application*

This Court's review of administrative asylum and withholding of removal eligibility determinations is limited to a deferential standard. In reviewing decisions of the Board denying an

application for asylum, the determination is upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998 ) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). We will reverse only if the evidence presented by Koxha was such that a reasonable factfinder would not fail in concluding that the requisite fear of persecution existed. *Elias-Zacarias,* 502 U.S. at 483-84 (citing *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939)).

The Attorney General may grant asylum to any person who qualifies as a "refugee." 8 U.S.C. § 1158(b). A refugee is a person unable or unwilling to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To prove one's refugee status, one must present specific facts demonstrating suffering of past persecution or a well-founded fear of future persecution motivated by one of these five statutorily protected grounds. *See Elias-Zacarias*, 502 U.S. at 481. The applicant's testimony, if credible, "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a). To prove a well-founded fear of future persecution, an applicant must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an "objective situation" under which his fear can be deemed reasonable. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440-41 (1987).

Koxha, in her effort to obtain asylum or similar relief, filed two applications and personally testified before the immigration judge. In its credibility determination, the immigration court found the inconsistencies between these three statements to be ultimately determinative. "[C]redibility determinations are considered findings of fact, and are reviewed under the substantial evidence

standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Based on that standard, this Court must treat findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252 (b)(4)(B)).

The immigration judge found inconsistencies in the evidence regarding both instances in which Koxha's husband was shot. Koxha's first application failed to mention the December 19 shooting at all. Her second application detailed the December 19 shooting and named the shooters as "two men sent by the Socialist Party." Finally, at her hearing, Koxha testified to the shooting but stated that she did not know who shot her husband. As to the October 2000 shooting, Koxha's first application named the shooters as members of the Socialist Party. Her second application does not mention the incident at all, indicating only that her husband died on that day due to "complications" from the previous shooting. Koxha later testified that the shooting occurred, but she did not know who the shooters were.

There were other significant inconsistencies in the evidence presented by Koxha. The incident involving Koxha, her husband, and several Democratic Party members being prevented from attending a demonstration was first mentioned during Koxha's testimony, but was not included in either of the applications. Koxha also failed to mention the trouble her son had with the police in either application, but did mention in those applications that he was in prison during the month of July 2000. The immigration judge also noted that Koxha's testimony regarding this incident conflicted with her son's testimony as to how severe his injuries were from the beatings – Koxha described the injuries as physically life threatening and her son described them as mainly

psychological. Additionally, Koxha failed to mention in her testimony her claims in the applications that her husband was jailed on a weekly basis in July of 2000 and that her son had been tortured.

Finally, the immigration judge found the proof offered regarding the alleged kidnapping of Koxha's daughter to be inconsistent. While Koxha testified to the kidnapping, she failed to mention the incident on either of her written applications. Koxha attempted to explain that the failure was because she thought she could explain the situation later and therefore just wrote about general threats in her application. The immigration judge dismissed this explanation on the grounds that the application clearly instructs applicants to write about all incidents in detail and the fact that Koxha filled out the second application with the assistance of counsel. In addition to these inconsistencies, Koxha failed to include on her written applications that her son had been arrested in the United States on August 12, 2002.

Given the cumulative effect of these inconsistencies we conclude that there exists substantial evidence in the record to support the immigration judge's adverse credibility finding.

*B. Constitutionality of an Affirmance Without Opinion*

In Koxha's brief to this Court, she spends a large portion of her argument discussing the recent changes to the immigration court's procedures. Specifically she argues that the Board of Immigration Appeals's practice of issuing affirmances without an opinion is unfair to applicants and unconstitutional. This Court is bound by the precedent of its previous decisions. *Johnson v. City of Cincinnati,* 310 F.3d 484, 509-510 (6th Cir. 2002). Therefore, we must turn our attention to this Court's holding in *Denko v. INS* for guidance in this case. 351 F.3d 717 (6th Cir. 2003).

In *Denko*, a Ukrainian citizen appealed the decision by the Board of Immigration Appeals denying relief. *Id*. In that appeal, Denko raised the claims that the Board's procedure in allowing a single member to issue summary affirmances of an immigration judge's order violated due process and that Denko's due process rights were violated by the Board's issuance of an affirmance without opinion. *Id.* at 720. "[T]he Fifth Amendment entitles aliens to due process of law in the deportation proceedings." *Id*. at 726 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Under 8 C.F.R. § 1003.1(a)(7), a single Board member is authorized to issue a decision affirming an immigration judge's decision without stating the basis for such an affirmance.

"[A] challenge to the summary affirmance procedure cannot stand when the only evidence that the summary affirmance procedure causes the [Board] to disregard its review responsibilities is the nature of the procedure itself combined with statistics indicating that thorough review would be difficult." *Denko*, 351 F.3d at 728 (citing *Albathani v. INS*, 318 F.3d 365-378-79 (1st Cir. 2003)). This Court held that Denko had provided no evidence showing the Board failed to give her case proper review. *Id*. Therefore, "the [Board's] streamlining procedures do not themselves alone violate an alien's rights to due process." *Id*. at 730.

In this case, Koxha's argument against the fairness and constitutionality of the Board's procedures is a retreading of the argument brought before this Court in *Denko*. Koxha argues that the procedures are unfair based upon the nature of the procedure itself. As stated in *Denko*, this is insufficient to establish a due process violation. *See id*. at 728. Koxha states in her brief that she has more to her argument than this, but merely cites to potential errors made by the original immigration judge. In *Denko*, this Court addressed that argument by stating that demonstrating a

single failure in an immigration judge's decision does not immediately mean that the Board's streamlined procedures violate the applicant's right to a fair review because of the remaining appellate venue that is the Court of Appeals. *Id*. at 730.

Although Koxha's brief does a commendable job enumerating a case against the procedures of the Board of Immigration Appeals, she is following in the footsteps of Denko and must therefore end at the same place: a denial of her appeal. Therefore, the constitutional challenge to the Board of Immigration Appeals's procedures must fail.

III.

For the reasons stated above, this Court DENIES her petition for review.

**MERRITT, Circuit Judge, concurring.** In these asylum cases I place substantial reliance on the country reports of the State Department and human rights organizations. These reports now show that the political and human rights situation in Albania is greatly improved. The latest State Department report, dated September 2005 (www.state.gov/r/pa/ei/bgn/3235.htm), says that the party of the asylum claimant in this case is now in power:

> On July 24, 2005, Alfred Moisiu was sworn in as President of the republic. A nonpartisan figure, nominally associated with the Democratic Party, he was elected as a consensus candidate of the ruling and opposition parties. The peaceful transfer of power from President Meidani to President Moisiu was the result of an agreement between the parties to engage each other within established parliamentary structures. This "truce" ushered in a new period of political stability in Albania, making possible significant progress in democratic and economic reforms, rule of law initiatives, and the development of Albania's relations with its neighbors and the U.S.
>
> . . . .
>
> The July 3, 2005 general elections were considered a sign in the right direction in terms of Albania's consolidation of democracy. The Democratic Party and its allies returned to power in a decisive victory, pledging to fight crime and corruption, decrease the size and scope of government, and promote economic growth. Their leader, Sali Berisha, was sworn in as Prime Minister on September 11, 2005.

The Rule of Law and the judiciary have been greatly improved. The harassment and persecution described by Koxha in the 1990's are no longer prevalent. I put a good deal more credence in these objective events than in the subjective credibility findings of the Immigration Judge. The fact that an applicant, who speaks a foreign language, not English, does not recite all the details of her case when she first applies for asylum seems less significant to me than the actual

conditions in the country in trying to judge the probability of persecution. For the reason that

Albanian country conditions are much changed for the better, I concur.