**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0402n.06
Filed: June 12, 2006

No. 05-3401

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ALIOUNE LY, | ) | |
| | ) | |
| **Petitioner,** | ) | **ON PETITION** FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO R. GONZALES, | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | **O P I N I O N** |
| **Respondent.** | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

Before:  **MARTIN, MOORE, and ROGERS, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.**  Petitioner Alioune Ly petitions for review of the decision of the Board of Immigration Appeals ("BIA" or "Board") denying his motion to reopen his removal proceedings.  The BIA rejected Ly's motion to reopen because it concluded that his evidence was insufficient to establish eligibility for adjustment of status based upon his marriage to a United States citizen, which occurred during the course of his removal proceedings.  The Board also concluded that Ly did not warrant a favorable exercise of discretion.  In his petition for review, Ly argues that the Board's refusal to reopen his case was an abuse of discretion and violated his due process rights.  As we conclude that the Board's decision was neither an abuse of discretion nor offensive to Ly's due process rights, we **DENY** Ly's petition for review.

## I. BACKGROUND

Petitioner Ly, who is a native and citizen of Mauritania, was legally admitted to the United States on January 17, 2001 as a nonimmigrant student for the purpose of attending the University of Mississippi. Joint Appendix ("J.A.") at 156 (Notice to Appear); J.A. at 107 (Oral Decision of Immigration Judge at 1). When Ly did not attend the University of Mississippi, he was served with a Notice to Appear in November 2001, which alleged that he was removable for violating the terms of his student visa. J.A. at 156. At his removal hearing in April 2002 where he was represented by counsel, Ly conceded removability, but claimed asylum, withholding of removal, and protection under the Convention Against Torture. J.A. at 119 (Removal Hr'g Tr. at 2). On January 3, 2003, the Immigration Judge ("IJ") denied Ly's requests for relief, and ordered him removed to Mauritania. J.A. at 114-15 (Oral Decision of IJ at 8-9). On October 22, 2003, Ly married Angela Robinson (now Angela Ly)[1], an American citizen.

On April 7, 2004, the BIA affirmed the decision of the IJ ordering Ly be removed to Mauritania. J.A. at 91-92 (Decision of BIA). Citing his recent marriage to Ms. Angela Ly, Ly filed a motion to reopen his removal proceedings with the BIA on July 2, 2004, pursuant to 8 C.F.R. § 1003.2. J.A. at 67-70 (Mot. to Reopen). The Department of Homeland Security ("DHS") opposed this motion on July 12, 2004, disputing that Ly's marriage was bona fide because Ly's addresses did not match that of his wife, and arguing that Ly had failed to submit the required supporting documents with his motion to reopen. J.A. at 55-61 (DHS Response to Mot. to Reopen). On August

---

[1]Ms. Ly's first name is recorded as "Angelia" in some documents in the record, and "Angela" in others. *See* J.A. at 68 (Mot. to Reopen at 2) (stating Ly had married Angelia L. Robinson); J.A. at 35 (Supp. to Mot. to Reopen at 2) (stating Angela Ly was Ly's wife). We refer to Ms. Ly as Angela, because that spelling appears most frequently in the record.

18, 2004, Ly sent supplemental materials to the BIA for filing in his motion to reopen, J.A. at 33-54 (Supp. to Mot. to Reopen), but our review of the record suggests that the government is correct that there is no evidence that the supplemental materials were ever received by and filed with the BIA. Respondent Br. at 16-17 n.7.

The BIA denied Ly's motion to reopen on March 7, 2005, concluding that the evidence Ly submitted in support of his marriage "raises questions about the respondent's prima facie eligibility for adjustment of status" on the basis of his marriage to an American citizen. J.A. at 32 (BIA Denial of Mot. to Reopen). The BIA determined that Ly's evidence was "problematic" in several ways. *Id*. The Board noted that the biographic information forms submitted by Ly and his wife did not list them living at the same address since their marriage in October 2003. *Id*. In addition, the Board noted that there was no clear record that Ms. Ly had actually filed an I-130 Petition for Alien Relative form on Ly's behalf with the United States Citizenship and Immigration Service ("USCIS"). Finally, the Board concluded that a favorable exercise of discretion was not appropriate in Ly's case because he had failed to appear for an interview with the United States Bureau of Immigration and Customs Enforcement ("ICE") in April 2004. *Id*.; J.A. at 62 (ICE Notification Letter). Ly filed a petition for review with our court on April 6, 2005, asking us to review the March 7, 2005 decision of the BIA denying his motion to reopen. Ly also filed a motion for reconsideration with the BIA on April 6, 2005, and the BIA denied that motion on April 29, 2005. J.A. at 9 (Mot. for Reconsideration); J.A. at 6 (BIA Denial of Mot. for Reconsideration). Ly did not file a petition for review of the denial of his motion for reconsideration, and thus we only consider the BIA's March 7, 2005 denial of Ly's motion to reopen.

## II. ANALYSIS

### A. The BIA's Denial of Ly's Motion to Reopen Was Not an Abuse of Discretion

Ly's first argument in his petition for review is that the BIA abused its discretion when it denied his motion to reopen. "We have jurisdiction to review the denial of a motion to reopen" pursuant to 8 U.S.C. § 1252(a). *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006). We review the denial of a motion to reopen a removal order for an abuse of discretion. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). "An abuse of discretion can be shown when the IJ or Board offers no 'rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id*. (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (alteration in original).

In Ly's motion to reopen, Ly argued that his October 2003 marriage to an American citizen entitled him to an adjustment of status. Pursuant to 8 U.S.C. § 1255(a), the Attorney General has the discretion to adjust an alien's status "to that of an alien lawfully admitted for permanent residence" if certain conditions are met. Section 1255(e)(1)-(2), however, excepts aliens like Ly who seek an adjustment of status based upon a marriage if that marriage occurred in "the period during which administrative or judicial proceedings are pending regarding the alien's right to be admitted or remain in the United States." As Ly's marriage occurred between the IJ's rejection of his claims for relief from removal and the BIA's affirmance of the IJ's decision, there is no dispute that the § 1255(e)(2) exception applies to Ly. There is a bona-fide-marriage exemption to this § 1255(e)(2) exception, which states that the exception:

> shall not apply with respect to a marriage if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place and the marriage was not entered into for the purpose of

4

procuring the alien's admission as an immigrant and no fee or other consideration was given . . .

8 U.S.C. § 1255(e)(3); *see also* 8 C.F.R. § 245.1(c)(9)(iii)(F). A request for the bona-fide-marriage exemption "must be made in writing and submitted with the Form I-485." 8 C.F.R. § 245.1(c)(9)(iv). "The request must state the basis for requesting consideration for the exemption and must be supported by documentary evidence establishing eligibility for the exemption." *Id*. Even if an alien establishes a prima facie case that the bona-fide-marriage exemption enables the alien to be considered for an adjustment of status as the basis of a motion to reopen, the BIA still has the discretion to deny the motion to reopen. *See* 8 C.F.R. § 1003.2(a).

Although Ly did not expressly rely upon 8 U.S.C. § 1255(e)(3) or 8 C.F.R. § 245.1(c)(9)(iii)(F) in his motion to reopen, this bona-fide-marriage exemption appears to have been the basis for Ly's request for an adjustment of status. J.A. at 68 (Mot. to Reopen at ¶¶ 4, 7) (stating that Ly married Ms. Robinson, an American citizen, and that Ly will therefore be eligible for adjustment of status to a permanent resident as an immediate relative of his wife). The Board denied Ly's motion to reopen on the basis of his marriage in a short order that explained that Board's reason for the denial. First, the Board concluded that Ly had not established a prima facie case for the bona-fide-marriage exemption. The Board determined that the fact that Ly had listed different addresses from that of his wife on his biographic forms suggested that the marriage was not bona fide. The Board also noted that Ly had not presented evidence that his wife had actually filed an I-130 Petition for Alien Relative on his behalf. Second, the Board explained that Ly did not warrant a favorable exercise of discretion because he had failed to appear for a required removal interview in April 2004. Upon review of these reasons, we cannot conclude that the Board lacked a rational explanation for its decision or that it inexplicably departed from its established policies,

5

*Denko*, 351 F.3d at 723, and therefore the Board did not abuse its discretion in denying Ly's motion to reopen.

In his brief before our court, Ly disputes the BIA's explanations for its decision to deny his motion to reopen. First, Ly argues that the discrepancy about his and Ms. Ly's address was a clerical error stemming from the fact that Ly was bound by a lease at his premarriage address through the end of January 2004. Petitioner Br. at 12. Ly explains that he therefore listed that address because he thought it was his legal address. *Id*. Unfortunately for Ly, however, he first proffered this explanation with a copy of his lease in his motion for reconsideration filed April 6, 2005, and therefore this evidence was not before the Board when it adjudicated his motion to reopen. We agree with the government that 8 U.S.C. § 1252(b)(4)(A) prevents us from considering this evidence because it was not part of the administrative record that was before the Board at the time of its decision on the motion to reopen. Ly had the opportunity to file a petition for review of the denial of his April 2005 motion for reconsideration, which might have allowed him to refute the BIA's conclusion about the disparate addresses, but there is no evidence before us that he filed such a petition.

Moreover, as the government points out, even if we could consider Ly's explanation for the address disparity in this petition for review, serious doubts remain about whether Ly was residing with his wife. For instance, on a change of address form that Ly filed with the BIA on March 25, 2004, Ly listed a new address in Memphis, Tennessee, which is not the address that Ms. Ly listed as her residence for that same time. J.A. 63 (Ly Change of Address); J.A. at 77 (Angela Ly Biographic Info Form) (listing Ms. Ly's address from September 2003 through the date of the form in July 2004 as in West Memphis, Arkansas). Although we do not view an alien's failure to reside

6

with his or her spouse to be absolutely determinative of whether or not the marriage is bona fide, we have on several occasions viewed evidence of an alien's living separately from his or her spouse as support for the conclusion that the marriage is not bona fide. *See Bangura v. Hansen*, 434 F.3d 487, 503 (6th Cir. 2006) (listing the fact that the alien and his wife did not live together as part of "substantial and probative evidence" supporting the INS's conclusion that marriage was fraudulent); *United States v. Kone*, 307 F.3d 430, 434 (6th Cir. 2002) (agreeing that evidence that spouses never lived together suggested a sham marriage). We therefore cannot conclude that the fact that Ly's address did not match his wife's was an irrational explanation for the BIA's conclusion that Ly had failed to make a prima facie showing that his marriage was bona fide.

Similarly, we are unpersuaded by Ly's claim that the BIA's other two reasons for denying his motion to reopen were irrational. From our review of the record, we agree that Ly had not submitted any evidence to the Board as of the time of its decision on his motion to reopen that verified that Ms. Ly had actually *filed* an I-130 Petition for Alien Relative on his behalf with the USCIS. Ly only submitted a copy of the I-130 form that appears to have been signed by Ms. Ly on July 2, 2004. We recognize that July 2, 2004 is the same date on which Ly filed his motion to reopen, and that it would therefore have been impossible for Ly to submit evidence with his motion to reopen verifying that Ms. Ly's I-130 form had already been *received* by the USCIS.[2] Thus we do not give this factor significant weight in our review. While we do not view this factor as negatively as did the BIA, we cannot conclude that it was an abuse of discretion for the BIA to

_____

[2]Ly submitted a document from the USCIS stating that it had received Ms. Ly's I-130 Petition for Alien Relative on Ly's behalf on August 25, 2004 as an exhibit to his motion for reconsideration. J.A. at 28 (USCIS Notice of Action). This evidence was not part of the record on his motion to reopen and therefore was not before the BIA when it decided his motion to reopen, and so it is not properly before us.

determine that Ly's failure to present any evidence that Ms. Ly had actually filed the I-130 on his behalf undermined his claim that his marriage was bona fide.

We are also unconvinced by Ly's argument that he failed to respond to the ICE's April 17, 2004 request that he appear before the ICE on April 28, 2004 because he intended subsequently to file a motion to reopen. The government is correct that Ly "had a duty to cooperate with immigration authorities and report for deportation absent [the grant of] a stay or other qualifying reason." Respondent Br. at 20 n.9; *see also* 8 C.F.R § 241.6 (stating that neither an alien's request for a stay of removal nor failure to receive disposition of a request for a stay of removal "shall delay removal or relieve the alien from strict compliance with any outstanding notice to surrender for deportation or removal.") Even if Ly's motion to reopen was a valid explanation for failing to appear before the ICE, Ly had never offered the BIA as of the time of the adjudication of his motion to reopen this or any other explanation for his failure to appear. In light of Ly's unexplained failure to comply with the ICE's request to appear, we cannot conclude that the Board's conclusion that Ly did not warrant a favorable exercise of discretion "inexplicably depart[s] from established policies." *Denko v. INS*, 351 F.3d at 723. As BIA did not abuse its discretion in denying Ly's motion to reopen, we deny Ly's petition for review on this basis.

## B. The BIA's Denial of Ly's Motion to Reopen Did Not Deprive Ly of Due Process

Ly's final argument is that the BIA's denial of his motion to reopen violated his due process rights. Ly argues that the BIA's rejection of his motion to reopen "has denied Mr. Ly the ability to convince an examiner with the USCIS that his marriage is legitimate." Petitioner Br. at 16-17. Ly also argues that he has a "vested right" to apply for adjustment of status "that can only be taken from him after some semblance of a hearing, similar to the interview conducted by the USCIS pending

8

its adjudication of an I-130 or a hearing before the Immigration Judge upon the filing of an I-485." *Id*. at 19. The Fifth Amendment protects aliens "from deprivation of life, liberty, or property without due process of law." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). "We review de novo claims of due-process violations in deportation proceedings." *Denko*, 351 F.3d at 726.

Ly's due process argument is without merit, however, because the relief he seeks in his motion to reopen is discretionary. The Attorney General's adjustment of status is a discretionary decision pursuant to 8 U.S.C. § 1255(a). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 569 (1972). Ly does not have a constitutionally protected liberty or property interest in obtaining discretionary relief. *See Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001) ("The failure to be granted discretionary relief does not amount to a deprivation of a liberty interest."); *Hanna v. Gonzales*, 128 F.App'x 478, 480-81 (6th Cir. 2005) (unpublished opinion). "If an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a 'unilateral expectation' to it." *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409-410 (6th Cir. 2002) (quoting *Roth*, 408 U.S. at 577). The BIA's refusal to reopen Ly's removal proceedings did not violate his Fifth Amendment rights.

### III. CONCLUSION

Because the BIA's denial of Ly's motion to reopen was neither an abuse of discretion nor a violation of due process, we **DENY** Ly's petition for review.

9