NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0262n.06

**Case No. 18-3661**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 21, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ELKY ROXANA VILLANUEVA-VASQUEZ;<br>MELBA TATIANA VASQUEZ-VILLANUEVA, | )<br>)<br>) | |
| *Petitioners*, | )<br>) | ON PETITION FOR REVIEW<br>FROM THE UNITED STATES |
| v. | )<br>) | BOARD OF IMMIGRATION<br>APPEALS |
| WILLIAM P. BARR, U.S. Attorney General, | )<br>) | |
| *Respondent*. | ) | |

BEFORE:    COLE, Chief Judge; BATCHELDER and DONALD, Circuit Judges.

COLE, Chief Judge.  Petitioners Elky Roxana Villanueva-Vasquez and her daughter, Melba Tatiana Vasquez-Villanueva, challenge the Board of Immigration Appeals' order denying their motion to reopen their removal proceedings on the basis of non-receipt of a Notice of Hearing and denying their motion to remand to the Immigration Judge on the basis of ineffective assistance of counsel.  For the reasons stated below, we affirm the Board Immigration Appeal's denial of their motion to reopen, and remand for further proceedings on their ineffective assistance of counsel claim.

**I. BACKGROUND**

Elky Villanueva-Vasquez ("Villanueva-Vasquez") was born in Honduras in 1988.  Shortly before Villanueva-Vasquez's fifteenth birthday, Nelvin Vasquez ("Nelvin"), the 18-year-old son

of a politically connected family, and a gang member, began harassing her. A year later, Nelvin forced Villanueva-Vasquez to live with him, and for the next ten years, Nelvin raped and beat Villanueva-Vasquez.

By 2010, Villanueva-Vasquez had had two daughters with Nelvin. Nelvin beat these children too. In 2011, Villanueva-Vasquez became pregnant with her third child. The child had problems developing in the womb. Nelvin did not want the baby and he tried to induce an abortion by beating Villanueva-Vasquez's stomach. The child, Melba Tatiana Vasquez-Villanueva ("Tatiana"), survived, but she was born with a heart defect. Tatiana had heart surgery in 2014. The surgery was successful, but Villanueva-Vasquez and Tatiana returned to the hospital often because the stress of living with Nelvin complicated Tatiana's recovery. Fearing that Nelvin's abuse could lead to the death of their youngest child, Villanueva-Vasquez fled to the United States with Tatiana in late 2014, leaving her other two daughters in her family's care.

Upon their arrival in the United States in October 2014, Villanueva-Vasquez and Tatiana were detained by Immigration and Customs Enforcement ("ICE"). Villanueva-Vasquez told immigration officials that she planned to live with her brother, Ibis Villanueva, and gave them his address in Memphis, Tennessee. At that time, Villanueva-Vasquez was also personally served with a Notice to Appear ("NTA"). The document stated that Villanueva-Vasquez was "subject to removal from the United States" under "the Immigration and Nationality Act . . . [because she was] an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Notice to Appear, R. 10-2, PageID 341.) The NTA also stated that she "must notify the Immigration Court immediately . . . whenever you change your address or telephone number during the course of this proceeding." (*Id.* at 342.) An identical NTA was also issued for Tatiana. Each notice stated that

a hearing would take place at a date and time "to be set." After two days of detention, Villanueva-Vasquez and Tatiana were released.

Villanueva-Vasquez and Tatiana moved to Memphis, Tennessee, with Villanueva-Vasquez's brother, Ibis. But soon after they arrived, Ibis's roommate attempted to rape Villanueva-Vasquez. In search of a safe place, Villanueva-Vasquez and Tatiana moved around the United States for nearly a year, eventually settling in San Antonio, Texas. Despite her frequent moves, Villanueva-Vasquez did not update her address with the Department of Homeland Security. Instead, as Villanueva-Vasquez moved, Ibis continually checked the mail at his Memphis, Tennessee address. Although Ibis moved in and out of the property, he asked his friend Francis Chavez to regularly check the mail on behalf of Villanueva-Vasquez.

On December 7, 2015, a notice of hearing for Villanueva-Vasquez and Tatiana was sent to the Memphis address Villanueva-Vasquez provided to ICE, informing them of their removal hearing on December 28, 2015, in Memphis, Tennessee. Villanueva-Vasquez alleges that she did not receive the notice. Due to her failure to appear, an in absentia removal order was issued on December 28, 2015, and mailed to Villanueva-Vasquez's address in Memphis. Ibis and Francis claim that they did not receive a notice of hearing for Villanueva-Vasquez prior to that date. Ibis informed Villanueva-Vasquez of the Immigration Court's in absentia removal order in late December.

In 2016, Villanueva-Vasquez engaged an attorney to represent her pro bono, but their relationship was fraught with problems from the beginning. Villanueva-Vasquez's counsel did not speak Spanish well, and she did not have a translator with her during their meetings. As a result, Villanueva-Vasquez felt uncomfortable confiding information to her counsel as she recognized that her counsel struggled to understand her. In September 2017, more than nine

months after Villanueva-Vasquez engaged counsel, and nearly two years after the IJ issued its removal order, her counsel filed a motion to reopen Villanueva-Vasquez's case. The two-page motion to reopen and rescind the in absentia removal order introduced only factual evidence that Villanueva-Vasquez did not receive the notice of hearing (with some errors), did not include any legal arguments, and did not include an asylum application, even though the motion claimed that she was requesting asylum. Furthermore, her counsel did not review the full declaration with Villanueva-Vasquez before submitting it to the Immigration Court.

On October 24, 2017, the Immigration Judge ("IJ") denied Villanueva-Vasquez's motion to reopen her in absentia order of removal. The IJ noted that "when a notice of hearing is sent by regular mail and is properly stamped and addressed according to normal office procedures, there is a presumption of delivery." (IJ Order, R. 10-2, PageID 155–62 (citing *Thompson v. Lynch*, 788 F.3d 638, 643 (6th Cir. 2015)).) Because Villanueva-Vasquez's motion failed to include any declarations, other than her own, or provide any information regarding where she lived after she left detention, the IJ held that Villanueva-Vasquez "failed to establish that her alleged lack of notice was through no fault of her own." (*Id*. at 158–59.) In addition, the IJ noted that it was unable to consider Villanueva-Vasquez's motion to reopen on the basis of asylum because she failed to include an application for asylum, or any country conditions evidence for the court to review.

Shortly after the IJ's decision, Villanueva-Vasquez filed a notice of appeal and secured new pro bono counsel. Through her new counsel, Villanueva-Vasquez filed a disciplinary complaint with the State Bar of Texas, alleging that her counsel failed to competently and diligently represent Villanueva-Vasquez.

In January 2018, Villanueva-Vasquez filed an appeal with the Board of Immigration Appeals ("BIA"). The appeal included a motion to reopen due to non-receipt of the notice of hearing, and a motion to remand due to ineffective assistance of counsel before the IJ. Unlike her application to the immigration court, Villanueva-Vasquez submitted a substantially more thorough 41-page brief, which included legal arguments related to her non-receipt of the notice of hearing, as well as a claim for ineffective assistance of counsel. She also provided the BIA a supplemental declaration detailing her experience; photos of her scars from years of domestic abuse by Nelvin; birth certificates for her daughters; a psychological evaluation showing a diagnosis of post-traumatic stress disorder and major depressive disorder; a declaration from her brother Ibis, outlining his diligence in checking the mail in Memphis, Tennessee; emails between her new counsel and Perez; and a series of BIA cases and citations that related directly to Villanueva-Vasquez's claim.

The BIA issued its decision affirming the IJ on June 15, 2018. The two-page decision focused mostly on the findings of the IJ and did not discuss any of the new documents presented to the BIA. The sole reference to Villanueva-Vasquez's new evidence was a simple statement claiming that the BIA had "considered all of the respondents' arguments on appeal and concurred with the Immigration Judge's denial of the respondents' motion to reopen." (BIA Decision, R. 10-2, PageID 3–4.)

Villanueva-Vasquez timely appealed.

## II. ANALYSIS

### A. Jurisdiction

We begin with the threshold question of jurisdiction. The majority of Villanueva-Vasquez's brief focuses on her argument that the IJ did not have jurisdiction to order her removed in absentia, and by extension, we do not have jurisdiction to review the IJ's decision. *See, e.g.*, *Union Pac. R.R. Co. v. Bd. of Locomotive Eng'rs*, 558 U.S. 67, 81 (2009) ("Subject-matter jurisdiction properly comprehended . . . refers to a tribunal's power to hear a case, a matter that can never be forfeited or waived.") (internal citations omitted). According to Villanueva-Vasquez, the charging document that would vest an immigration court with jurisdiction to hear her case, the NTA, was defective because it failed to include the time and place of her hearing. And without a time or date, she argues that it did not meet the minimum statutory requirement for the purposes of vesting an immigration court with jurisdiction. *See Pereira v. Sessions*, 138 S. Ct. 2105, 2116 (2018) ("When the term 'notice to appear' is used elsewhere in the statutory section . . . it carries with it the substantive time-and-place criteria required by § 1229(a).")

The government, however, contends that the NTAs served on Villanueva-Vasquez and Tatiana "contained all of the information required by 8 C.F.R. 1003.15(b)," and were therefore sufficient to vest the immigration court with jurisdiction. (Appellee Br. 13.) And even if the NTAs were deficient, the government contends that the subsequent notices of hearing cured any initial defect.

At the time the parties submitted their briefs, no circuit court had issued a published decision addressing whether a "defective" NTA can be cured by a notice of hearing with a time and date, and thus, provide subject-matter jurisdiction for an immigration court. *See Hernandez-Perez v. Whitaker*, 911 F.3d 305, 311 n.3 (6th Cir. 2018) ("Neither we nor our sister circuits have

issued a precedential decision addressing this position."). But in *Hernandez-Perez*, we addressed the issue, and "conclude[d] that jurisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing, *see* 8 U.S.C. § 1229(a), is provided in a Notice of Hearing issued after the NTA." *Id.* at 314–15. Since we published *Hernandez-Perez*, two other circuits have come to a similar conclusion. *See Karingithi v. Whitaker*, 913 F.3d 1158, 1161–62 (9th Cir. 2019); *Banegas Gomez v. Barr*, Case No. 15-3269, 2019 WL 1768914, at *6 (2d Cir. 2019).

*Hernandez-Perez*'s ruling is thus dispositive of whether the immigration court had jurisdiction to hear Villanueva-Vasquez's case. It also answers the question of whether a subsequent notice of hearing can cure a defective NTA. Under *Hernandez-Perez*, the immigration court had jurisdiction to conduct Villanueva-Vasquez's removal proceeding based on the notice of hearing, which cured her defective NTA. 911 F.3d at 314–15. Although *Hernandez-Perez* does not focus on notice within the context of in absentia removal proceedings, the holding nevertheless explicitly states that jurisdiction vests when the statutorily required time and date information is provided in a subsequent notice of hearing (i.e. a notice of hearing can cure a defective NTA). *Id.* Because it is undisputed that the government issued a notice of hearing to Villanueva-Vasquez that included the time and date of her removal hearing—irrespective of whether she received it— jurisdiction properly vested with the IJ.

We therefore conclude that the IJ did have jurisdiction to hear Villanueva-Vasquez's case, and that we have jurisdiction to hear her appeal of a final removal order under 8 U.S.C. § 1252.

### B. Villanueva-Vasquez's Motion to Reopen Removal Proceedings

On the merits, Villanueva-Vasquez argues that the BIA erred when it failed to reopen her removal proceedings and rescind her in absentia order based on the evidence she presented. We

review the denial of a motion to reopen for abuse of discretion. *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004). The BIA abuses its discretion when "it acts arbitrarily, irrationally or contrary to law." *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003). "Where the [BIA] affirms the IJ's ruling but adds its own comments," as it did here, "we review both the IJ's decision and the [BIA]'s additional remarks." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009).

On appeal, Villanueva-Vasquez points out that she "provided the BIA with a 41-page brief in support of [her and Tatiana's] appeal, [and] 191 pages of exhibits," and received a "sparse, two-page decision" that failed to mention any new evidence presented to the BIA. (Appellant Br. 30.) Thus, she contends that the BIA failed to consider whether she *actually* received the notice of hearing. This includes "evidence that, although the mail at the location where the notice was purportedly sent was checked every day, Petitioner's notice did not arrive," as well as evidence of "her incentive to pursue relief, Petitioner's attempts to comply with immigration requirements, and Petitioner's confusion about her obligations due to deception." (Appellant Br. 33–34 (emphasis in original).) The government counters that the agency properly sent the notice of hearing to the address provided by Villanueva-Vasquez, and she did not update immigration officials with a new address after she moved. Because "the [BIA] correctly noted that the record evidences delivery to the address provided by Petitioners and that there is a presumption of delivery when a notice of hearing is delivered by means of regular mail and is properly stamped and addressed according to normal office procedures," the government contends that Villanueva-Vasquez cannot show that she did not receive the Notice of Hearing. (Appellee Br. 46 (citations omitted).)

Villanueva-Vasquez argues that this court's recent ruling in *Truijillo Diaz v. Sessions*, 880 F.3d 244 (6th Cir. 2018), mandates that we should reverse the BIA for denying her motion to

reopen. In *Truijillo Diaz*, we found that the BIA had abused its discretion when it failed to "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." 880 F.3d at 255 (quoting *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003)). Under Villanueva-Vasquez's reading of *Truijillo Diaz*, the BIA would abuse its discretion whenever it fails to discuss any new evidence presented before it. This interpretation misreads *Truijillo Diaz*, which turned on the BIA's failure to consider newly-presented country-conditions evidence that was "material and was not available and would not have been discovered or presented at the previous proceeding." *Id.* at 249 (quoting 8 U.S.C. § 1229a(c)(7)(A)). In contrast, Villanueva-Vasquez does not argue that any of the declarations submitted before the BIA contained new evidence that was unavailable when she filed her motion to reopen with the immigration court. Because none of the evidence presented before the BIA on the merits of Villanueva-Vasquez's claims was unavailable when she initially filed her motion to reopen with the immigration court, the BIA did not abuse its discretion by failing to address the evidence Villanueva-Vasquez presented for her motion to reopen.

## C. Villanueva-Vasquez's Motion to Remand

Finally, Villanueva-Vasquez claims that the BIA failed to address her motion to remand on the basis of ineffective assistance of counsel.[1] Villanueva-Vasquez's claim for ineffective assistance of counsel is cognizable under both the Fifth Amendment's guarantee of due process "in deportation proceedings, entitling [an alien] to a full and fair hearing," *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001), and the administrative remedy provided for ineffective

---

[1] Villanueva-Vasquez also argues that BIA failed to use its sua sponte authority to reopen her proceedings. The government correctly notes, however, that we lack jurisdiction over whether or not the agency erred in not using its sua sponte authority to reopen proceedings. *See Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) ("[T]he decision whether to invoke sua sponte authority . . . is committed to the unfettered discretion of the BIA and therefore is not subject to judicial review.") (internal quotations omitted).

assistance claims in the immigration context, *In re Lozada*, 19 I. & N. Dec. 637, 638–39 (B.I.A. 1988).

As an initial matter, the government argues that we held in *Al-Saka v. Sessions* that "[t]he Fifth Amendment simply does not guarantee the right to counsel or, it follows, the right to effective counsel in removal proceedings." (Appellee Br. 49) (quoting *Al-Saka v. Sessions*, 904 F.3d 427, 434 (6th Cir. 2018).) This overreads the holding in *Al-Saka*. First, as Judge White's concurrence in that opinion states, the section of *Al-Saka* cited by the government is dicta. *See Al-Saka*, 904 F.3d at 435 (White, J., concurring). Second, even if the proposition had not been dicta, *Al-Saka* stated that there is no independent Fifth Amendment right to counsel *beyond* the administrative remedy for ineffective assistance of counsel outlined by the Justice Department. *Id.* at 434. As one commentator has noted, the administrative remedy provided by immigration law is "unique" for offering "a litigant a 'second bite of the apple'—by claiming that he or she was a victim of ineffective assistance of counsel—and reopen[ing] the proceedings." Emmanuel S. Tipon, et al., 58 A.L.R. Fed. 2d 363 (2011). Even if Villanueva-Vasquez had no viable claim under the Fifth Amendment, her motion to remand on the basis of ineffective assistance of counsel could still proceed under the administrative framework set forth in *Lozada*. *Cf. Huicochea-Gomez*, 237 F.3d at 699 ("The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." (citing *Dokic v. I.N.S.*, 999 F.2d 539 (6th Cir. 1993))).

Generally, we review the "BIA's denial of a motion to remand . . . for abuse of discretion." *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004) (citing *Fieran v. INS*, 268 F.3d 340, 344 (6th Cir. 2001)). "However, where there is a claim of ineffective assistance of counsel, we review this question of law de novo." *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005) (citing *INS v.*

*Doherty*, 502 U.S. 314, 321–22 (1994)). But the posture of this case places us in a strange juxtaposition between the two standards: under her motion to remand to the IJ, Villanueva-Vasquez presented evidence to the BIA of an ineffective assistance of claim—evidence which the BIA failed to address at all.[2] Although, an ineffective assistance of counsel claim in a motion to remand would usually be reviewed de novo, *see id.*, the BIA's failure to address the claim at all means that we have nothing from the lower court to review. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("[I]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

Outside of the ineffective assistance context, we have held that, in reviewing the BIA's denial of a motion to remand, we must determine whether the BIA's decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination[.]" *Pilica*, 388 F.3d at 948 (quoting *Balani v. INS,* 669 F.2d 1157, 1161 (6th Cir. 1982)). When the BIA fails "to provide any explanation whatsoever to accompany its decision on Petitioner's motion to remand, it unquestionably fail[s] to supply a 'rational explanation.'" *Id.* This is because "the [BIA's] denial of relief may be affirmed only on the basis articulated in the decision and this Court may not assume that the BIA considered factors that it failed to mention in its opinion." *Daneshvar*, 355 F.3d at 626; *see also Patel v. Sessions*, 742 F. App'x 89, 94, 2018 WL 3414355, at *4 (6th Cir. July 13, 2018) (requiring remand where the court "cannot tell from the BIA's opinion whether it in fact considered all of the evidence before it or instead ignored relevant evidence favoring the [Petitioner]").

---

[2]We note that Villanueva-Vasquez has met the high procedural bar that must be cleared before the BIA can hear an ineffective assistance of counsel claim. She provided the BIA with a declaration alleging that her counsel was negligent in representing her and Tatiana; emails informing her counsel of the IAC allegations and a request for her to respond; and a copy of a complaint filed with the Texas bar. *See Lozada*, 19 I. & N. Dec. at 639.

Here, the BIA not only failed to provide a rational explanation, it failed to provide *any* explanation of its denial of Villanueva-Vasquez's motion to remand. This failure amounts to an abuse of discretion, requiring remand for the BIA to consider—for the first time—Villanueva-Vasquez's motion to remand to the IJ on the basis of ineffective assistance of counsel.

### III. Conclusion

For the foregoing reasons, this Court affirms the BIA's decision regarding Petitioner's motion to reopen removal proceedings. This case is remanded to the BIA, however, for further proceedings consistent with this opinion regarding Petitioner's motion to remand on account of ineffective assistance of counsel.

ALICE M. BATCHELDER, Circuit Judge, concurring. I concur in the disposition of this appeal and write to emphasize one point from the majority's analysis. I fully endorse Sections II.A and II.B (establishing jurisdiction, § II.A, and upholding the BIA's denial of Villanueva-Vasquez's motion to reopen, § II.B). I also join Section II.C, holding that the BIA abused its discretion by denying a colorable ineffective-assistance-of-counsel (IAC) claim without providing any explanation for its decision, and remanding for a proper analysis of the IAC claim. But this is not a viable constitutional claim, nor would it survive de novo review.

As we explained in *Al-Saka v. Sessions*, 904 F.3d 427, 433 (6th Cir. 2018), the BIA and Attorney General, in exercising their discretion and statutory authority pursuant to the INA, have crafted an *administrative remedy* for IAC claims arising in removal proceedings, based on the framework set out in *In re Lozada*, 19 I. & N. Dec. 637, 638–39 (B.I.A. 1988). *See also* Motions to Reopen Removal, Deportation, or Exclusion Proceedings Based Upon a Claim of Ineffective Assistance of Counsel, 81 Fed. Reg. 49,556, 49,557 & n.3 (proposed July 28, 2016) (citing 8 U.S.C. §§ 1103(g)(2), 1229a). When a claimant satisfies *Lozada*'s procedural requirements—as Villanueva-Vasquez did here, *see* Maj. Op. fn.2—the BIA is obliged to acknowledge, consider, and expressly decide that IAC claim. I agree with the majority that the BIA's failure to do so here was an abuse of its discretion necessitating remand for it to do so in the first instance.

But the point in *Al-Saka* was that the Constitution does not guarantee any counsel in an immigration hearing, *much less effective counsel*, because the only applicable provision, the Fifth Amendment Due Process Clause, "constrains the federal government, not private citizens":

> Unlike in criminal cases [under the Sixth Amendment], the government has no role in appointing counsel in immigration hearings because the Due Process Clause does not guarantee a right to government-provided counsel in civil litigation. Removal proceedings are purely civil actions designed to provide a streamlined determination of eligibility and put an end to a continuing violation of the

> immigration laws. The Fifth Amendment simply does not guarantee the right to counsel or, it follows, the right to effective counsel in removal proceedings.

*Id.* at 433-34 (editorial marks, quotation marks, and citations omitted). Therefore, to the extent that Villanueva-Vasquez would pursue a claim for ineffective assistance of counsel under the Fifth Amendment's guarantee of due process, she misconstrues her rights and cannot succeed.

As we warned in *Al-Saka*, this approach of framing IAC claims as Fifth Amendment violations of "fundamental fairness" quite simply "will not help immigrants." *Id.* at 435.

> The Fifth Amendment requires a proceeding to be 'fundamentally unfair' before it kicks in. That is not an easy standard to meet. It may require more than the showing of prejudice that the [BIA] currently requires. And it assuredly requires more than . . . only that the immigrant satisfy the *Strickland* standard.

*Id.* (quotation marks and citations omitted); *see Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005) ("To constitute fundamental unfairness, . . . a defect in the removal proceedings must have been such as might have led to denial of justice." (quotation marks and citation omitted)). This is critical in that Villanueva-Vasquez would lose a de novo review for fundamental fairness.

The Fifth Amendment does not provide an alien with any right to counsel in removal proceedings, so it cannot provide a derivative right to *effective* counsel. Therefore, resort to the Fifth Amendment for relief from ineffective counsel is—and can only be—a due-process fundamental-fairness claim. *Cf. Sako v. Gonzales*, 434 F.3d 857, 863-64 (6th Cir. 2006); *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). "We review de novo claims of due-process violations in deportation proceedings." *Denko v. I.N.S.*, 351 F.3d 717, 726 (6th Cir. 2003). On de novo review, we apply the record evidence to the governing law, without deference to the IJ's or BIA's determination. "The alien carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." *Id.* (citing *Denko*, 351 F.3d at 724).

In her motion, Villanueva-Vasquez made three claims of prejudice or "fundamental unfairness." She claimed that a sworn declaration (of hearsay) by her brother, Ibis, that his friend, Francis, was checking the mail regularly and did not receive the Notice to Appear (NTA) would have overcome the presumption of delivery and convinced the IJ to reopen the proceedings on the basis that she had never actually received the NTA. She claimed the IJ would have reopened her case sua sponte due to "exceptional circumstances" if her attorney had relayed her inability to speak English, her sixth-grade education, her ignorance of U.S. Immigration law, her PTSD and major depressive disorder, and her daughter's serious heart condition. And she claimed a strong likelihood of success on her claims for withholding, asylum, and CAT relief as a member of a "social group of Honduran women unable to leave a domestic relationship, and the continuing violent threats by the man who raped, beat, and abused her." But a careful review of these claims and the record evidence submitted to the IJ and BIA does not result in a finding that these alleged errors or omissions rise to the level of due process fundamental unfairness.

This is not to say that Villanueva-Vasquez cannot prevail in her IAC claim on remand. This is only to say that she could not prevail on a Fifth Amendment due process claim and, therefore, it would not benefit her to (mis)characterize her IAC claim as one.

With this explanation, I concur in the majority opinion.